VINCENT D. BAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 1184-74.
United States Tax Court
T.C. Memo 1976-93; 1976 Tax Ct. Memo LEXIS 310; 35 T.C.M. (CCH) 396; T.C.M. (RIA) 760093; March 24, 1976, Filed Raymond E. Caruso, for the petitioner. Gerald J. O'Toole, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $10,325.06 in petitioner's 1971 income tax plus an addition to tax under section 6653(b) [1] of $5,162.53. The issues presented for our decision are (1) the extent to which petitioner failed to pay income tax for 1971 and (2) whether any part of the underpayment was due to fraud within the meaning of section 6653(b). *311 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Vincent D. Baker (petitioner) was incarcerated at the Marlboro Prison Farm, Marlboro, New Jersey, at the time the petition herein was filed. Petitioner failed to file an income tax return for the taxable year 1971. During 1971, petitioner operated a grocery store in Neptune, New Jersey, as a sole proprietorship. During the entire year he lived with, but was not married to Marcia Peak (Peak). Peak was employed by Bell Telephone in Asbury Park, New Jersey, where her base pay was approximately $7,500 per year. On February 8, 1973, petitioner pleaded guilty in a New Jersey Superior Court to a charge of unlawful distribution of heroin. Petitioner received a sentence of five to seven years and this sentence was affirmed on appeal. On June 8, 1972, based upon information that petitioner had received money from narcotic sales, respondent made a jeopardy assessment against petitioner for the taxable year 1971. On August 4, 1972, a statutory notice of deficiency relating to this jeopardy assessment was mailed to petitioner. In this notice of deficiency, respondent found petitioner's 1971 gross income to be *312 $71,258.60 and determined a deficiency in his 1971 income tax of $35,668.50, plus a 50-percent fraud penalty of $17,834.25. No petition was filed with this Court with respect to the August 4, 1972, notice of deficiency and on November 20, 1973, a second statutory notice of deficiency was mailed to petitioner [2] in which respondent determined that petitioner's 1971 gross income should be increased by $28,355.84. It is this notice of deficiency that forms the basis of the petition in the instant case. Because he was unable to obtain any business records from petitioner for the year 1971, respondent used the bank deposits and cash expenditures method of reconstructing petitioner's 1971 income. The parties have stipulated that, during 1971, the total deposits to petitioner's checking account at the First Merchants National Bank, Asbury Park, New Jersey, amounted to $56,958.98, of which $51,203.97 were in currency and $5,755.21 were *313 by check. Respondent determined that $56,203.01 of these total checking account deposits constituted gross income to petitioner for 1971. Respondent found that the remaining $755.97 represented a non-income source of funds of $600.50 (food stamps) [3] and a transfer of $155.47 from a savings account. The parties have stipulated that during 1971 petitioner also made deposits of $623.71 to his savings account at First Merchants National Bank and that, except for the $155.47 transferred to his checking account, this sum remained on deposit at the end of that year. Thus, respondent determined that $56,826.72 deposited by petitioner during 1971 constituted gross income to him in that year. Respondent also determined that petitioner made the following cash expenditures during 1971: Living expenses
$15,600.00
Clothing expenses
688.50
Furniture purchase
13,935.22
Purchase of house
4,750.00 [4]
Currency exchange
10,000.00
$44,973.72
Less: checks made out
to petitioner
or cash
2,186.00
Net cash expenditures
$42,787.72
*314 The above estimated cash living expenses incurred by petitioner during 1971 were based on an interview conducted by two of respondent's agents on July 14, 1972, at the Trenton State Prison. In this interview, petitioner stated that he had traveled quite extensively during 1971, entertained women, and frequently visited various nightclubs in New York City. The parties have stipulated that, during 1971, petitioner purchased $1,838.50 in clothing from a New York City store and that $688.50 of this amount was paid in cash. While examining petitioner's 1971 bank records, respondent's agent found that, during 1971, petitioner had purchased by check about $3,700 worth of furniture at a local furniture store. The agent contacted the store and discovered that Peak had spent an additional $13,935.22 in cash for furniture during that year. Because petitioner and Peak were living together during the year, respondent attributed the cash purchases for furniture to petitioner. The last of the above-mentioned cash expenditure items involved an incident, which occurred on July 7, 1971, in which petitioner exchanged $10,000 in currency for smaller denominations at the First Merchants National *315 Bank in Asbury Park, New Jersey. Because the exchange involved an unexplained source of funds, respondent treated the exchange as a cash expenditure and added the entire amount to petitioner's 1971 gross income. By taking the sum of net deposits of $56,826.72, plus net cash expenditures of $42,787.72, respondent determined petitioner's 1971 gross income to be $99,614.44. In determining the deficiency at issue in the instant case, respondent allowed petitioner business deductions of $11,637.75 [5] and a depreciation deduction of $1,055.31. In addition, respondent reduced petitioner's 1971 gross income by $71,258.60, which amount was determined in the uncontested August 4, 1972, notice of deficiency. In this manner, respondent determined additional 1971 gross income of $28,355.84, and it is this amount on which the deficiency and the addition to tax at issue in the instant case are based. Prior to and during the trial of this case, petitioner contended that a substantial part of the funds which he deposited and spent during 1971 originated from personal loans he had obtained from *316 various individuals. In response to written interrogatories served upon him by respondent, petitioner stated that he expected to locate notes or other documents evidencing these alleged debts prior to trial of this case. The only written evidence he was able to produce was a note showing that, on January 7, 1971, he borrowed $2,500 from First Merchants National Bank. In the July 14, 1972, interview conducted by two of respondent's agents, petitioner was asked questions concerning the $10,000 currency exchange, and he denied having made such an exchange. In his answer to respondent's interrogatories and during the trial of this case, petitioner admitted the existence of the currency exchange but contended that he received the $10,000 in cash from a personal loan. During the course of the July 14 interview, petitioner was also asked whether he filed an income tax return for 1971. He responded that he did not file for that year because he was instructed not to by his accountant, Mr. Jack Spitz (Spitz). As part of the above-mentioned interrogatories, respondent asked petitioner whether he had filed a Federal income tax return for 1971 and, if so, whether he had in his possession *317 or control a copy of said return. Petitioner answered that he was unable to locate a copy of his return for that year. In the petition filed on February 20, 1974, in the instant case, petitioner stated that he had timely filed his 1971 income tax return. Petitioner made no statement to the contrary in his amended petition filed June 24, 1974. OPINION When, as here, a taxpayer is unable to produce any books and records for a taxable year. it is well settled that respondent may employ the bank deposits plus cash expenditures method of reconstructing his income. Gromacki v. Commissioner,361 F. 2d 727 (7th Cir. 1966); John Harper,54 T.C. 1121 (1970). The existence of large and unexplained deposits and expenditures does not, in itself, show that such amounts are income; however, when respondent has determined that such amounts constitute income, the burden of proving that determination to be erroneous lies with petitioner. Thomas B. Jones,29 T.C. 601, 613-614 (1957). We find that petitioner has not carried this burden and we hold for respondent. Petitioner alleges that a substantial amount of the funds he received during *318 1971 came from various personal loans, including five loans totaling $35,000 from one Melvin Coombs, now deceased. However, with the exception of a $2,500 loan from First Merchants National Bank, petitioner did not produce any written documents or corroborating testimony to prove the existence of these loans. His sole offer of proof consisted of his testimony at trial and, after listening carefully to such testimony and observing his demeanor as a witness, we are unable to believe him. Petitioner also contends that the $71,258.60 of gross income derived from the alleged sale of drugs during 1971 and determined in the uncontested August 4, 1972, notice of deficiency was in cash and was therefore available to be deposited and spent during the year. This is no doubt true, but we fail to see how this benefits petitioner's position in view of the fact that respondent reduced petitioner's 1971 gross income by $71,258.60 before determining the deficiency and addition to tax at issue in the instant case. Further, we find that petitioner has produced insufficient evidence to prove his contention that part of the $2,500 loan he received from First Merchants National Bank on January 7, 1971, was *319 deposited in his checking account. He testified that he cashed the check for $2,500 and spent the money in less than one month to pay various outstanding bills. His checking account during the period from January 7, 1971 to February 7, 1971, shows three cash deposits of $100, $300, and $300, respectively. The rate and amount of these cash deposits during this one-month period does not vary substantially from the rate and amount of cash deposits made by petitioner throughout the entire year. Thus, we think it is as equally plausible that the cash for these three deposits came from income sources as from the loan proceeds. [6]
*320 We are also unpersuaded by petitioner's contention that respondent overestimated his cash living expenses for 1971. Respondent made this estimation, in part, on the basis of statements made by petitioner to respondent's agents as to the style in which he traveled and entertained during the year. At trial, however, petitioner testified that he was only bragging to the agents and that his living expenses for the year were closer to $7,200, instead of the $15,600 determined by respondent. Again, we are unable to believe petitioner's testimony and find that he has likewise failed to overcome the presumptive correctness of respondent's determination on this point. [7]
The remaining issue presented for our decision is whether any part of the underpayment of petitioner's 1971 income tax was due to fraud within the meaning of section 6653(b). The burden of proof rests with respondent to prove, by clear and convincing evidence, that some part of the underpayment was due to fraud with an intent to evade tax. Section 7454(a); Frank Imburgia,22 T.C. 1002, 1014 (1954); Rule 142(b), Tax Court Rules of Practice and Procedure.
It is *321 well established that the 50-percent addition to tax provided for in section 6653(b) may be imposed when there has been a willful failure to file a return. E.g., Fred N. Acker,26 T.C. 107 (1956). Although willful failure to file is, by itself, insufficient to support a finding of fraud, Anson Beaver,55 T.C. 85, 93 (1970), such failure is properly considered together with other facts in order to establish the requisite intent to evade tax. Cirillo v. Commissioner,314 F. 2d 478 (3d Cir. 1963), affg. in part a Memorandum Opinion of this Court. Based on a careful examination of the record before us, we are convinced that there exist sufficient indicia of fraud to support respondent's determination under section 6653(b). Petitioner was unable to produce any business records for 1971. At trial, he first testified that his records for that year were destroyed during riots which took place in Asbury Park. When reminded by his attorney that these riots occurred in 1970 and not 1971, he changed his testimony and explained that the records were confiscated by the police during the course of an arrest. Further inquiry on this point revealed *322 that petitioner never asked the police to return these records and that the records taken were not necessary to reconstruct his income and expenses for that year. The progression of petitioner's testimony on this matter leaves us with the distinct impression that he was not telling the truth. We can only conclude that petitioner either failed to keep any records for 1971, destroyed such records, or willfully failed to make them available to respondent. Any one of these actions is evidence of his fraudulent intent. Woodham v. Commissioner,256 F. 2d 201 (5th Cir. 1958), affg. a Memoraudum Opinion of this Court; Estate of Dorothy E. Beck,56 T.C. 297 (1971), acq. 1972-2 C.B. 1. Petitioner failed to cooperate with respondent's agents by denying the existence of the $10,000 currency exchange and by implying in his answer to respondent's interrogatories that he had filed a 1971 return. In fact, in the petition filed in this case, petitioner stated that he had timely filed his 1971 return. He now admits that he did not. Petitioner also represented to respondent's agents that he would produce notes or other written evidence in support of *323 the alleged loans he received in 1971. With one exception, he has never done so. Such behavior is further evidence of fraud. Powell v. Granquist,252 F. 2d 56 (9th Cir. 1958). The only defense petitioner offers for failing to file his 1971 return is that, about one week before the filing date, his accountant, Spitz, told him that he should not file unless he had exact records. Spitz, however, testified that he could recall no such conversation. Even assuming Spitz made such a statement to petitioner, we think it noteworthy that thereafter petitioner never attempted to retrieve or reconstruct his records even though, as he testified, he was fully aware of his obligation to file and pay tax for 1971. We think that such "disingenuous avoidance of accurate knowledge when the need for such knowledge must have been apparent was in itself a substantial indication of fraudulent intent." Cirillo v. Commissioner,supra at 483. Because of computations relating to concessions made by respondent at trial, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Interal Revenue Code of 1954.↩
2. This action is in accord with sec. 301.6213-1(c), Income Tax Regs. See also Gilbert B. Goff,18 B.T.A. 283 (1929), Wilburn Smith,18 B.T.A. 289 (1929), and Lewis E. Smoot,25 B.T.A. 1038↩ (1932).
3. The parties have incorrectly stipulated this amount to be $650.50.↩
4. Respondent has conceded that this item should be reduced to $1,194.↩
5. Respondent conceded at trial that this amount should be increased by $5,187.77 to $16,825.52.↩
6. However, the $2,500 loan does represent the receipt of a non-income source of cash, and evidence presented shows that only $1,184.94 of the loan was ever repaid by petitioner in 1971. We think it probable that, as petitioner testified, part of the loan proceeds was spent by petitioner for living expenses during the approximate one-month period he had the cash in his possession. Accordingly, under the rule of Cohan v. Commissioner,39 F. 2d 540↩ (2d Cir. 1930), we hold that respondent's determination regarding petitioner's 1971 living expenses should be reduced by $300.
7. See, however, fn. 5, supra.↩