**A. R. WOODHAM and Rosalie Woodham, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16573.**

United States Court of Appeals
Fifth Circuit.
June 5, 1958.

Hugh R. Dowling, Jacksonville, Fla., Dowling & Culverhouse, Hugh F. Culverhouse, James E. Miller, Jacksonville, Fla., for petitioners.

Davis W. Morton, Jr., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., D. of J., Lee A. Jackson, S. Dee Hanson, A. F. Prescott, Nelson P. Rose, Chief Counsel, Rollin H. Transue, Sp. Atty., Int. Rev. Ser., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal involves the liability of the taxpayer, A. R. Woodham, hereafter called taxpayer, and his wife, Rosalie Woodham, for deficiencies in income taxes and statutory additions thereto (50 percent fraud penalties) as determined and asserted against them by the commissioner in the total amounts of $40,121.09 and $20,060.55, and redetermined by the Tax Court [1] in the decreased total amounts of $18,153.60 and $9,076.-82, respectively, for the five successive taxable years 1946 through 1950.

---

1. The memorandum findings of fact and opinion of the Tax Court, in which, far from swallowing whole the determinations and evidence of the commissioner, the court subjected them to the severest scrutiny, making up its findings only after the most careful consideration, are not officially reported.

Here, contending that instead of $77,-052.07, as found by the Tax Court, based upon respondent's computation, after giving effect to the adjustments stipulated by the parties at the hearing before it, his interest income was not in excess of $50,285.25, the amount testified to by his accountant, and that no part of any deficiency which may be due from him for the taxable years 1946–1950, inclusive, due to fraud within the meaning of Sec. 293(b) of the Internal Revenue Code of 1939, 26 U.S.C. § 293(b), taxpayer makes two points[2] against the Tax Court's findings and decision.

Arguing under point one that the finding of fact of the Tax Court in rejecting his accountants' figures of $50,285.25, and sustaining the Commissioner's determination in the amount of $77,052.07 is clearly erroneous, taxpayer insists that the record demonstrates that the Commissioner's determination is without sound basis, and that the figures of his accountants are soundly based and must be accepted as correct.

Under point two, taxpayer, planting himself firmly on the settled principle of law, that the burden of proof is on the Commissioner to establish fraud, puts forward and relies upon decisions holding that proof merely of substantial understatements of income tax for a particular year or years is not of itself sufficient proof of fraud, citing Goldberg v. Commissioner, 5 Cir., 239 F.2d 316; Davis v. Commissioner, 10 Cir., 184 F.2d 86, 22 A.L.R.2d 967; Wiseley v. Commissioner, 6 Cir., 185 F.2d 263, and Eagle v. Commissioner, 5 Cir., 242 F.2d 635.

Standing firmly on this principle and these cases, taxpayer insists that on this record it must be held that the Tax Court's finding of fraud is without any evidence to support it or, if there is some evidence, considered on the whole record, it is clearly erroneous and that it may not stand.

We cannot agree with taxpayer on either point. On the contrary, we are of the firm view that on the facts admitted and found,[3] and the conclusions of the tax court as to the deficiencies and that a part of them as to each of the years was due to taxpayer's fraudulent

2. These are: (1) The petitioner did not realize interest income in excess of the amount of $50,285.25, and the Tax Court erred in sustaining the Commissioner's determination of interests income in the amount of $77,052.07 in the face of clear and convincing evidence to the contrary.

(2) The respondent failed to carry his burden of proving that any of the deficiencies for the years 1946–1950, inclusive, was due to fraud with intent to evade tax within the meaning of Section 293(b) of the Internal Revenue Code of 1939.

3. During the years in issue, in addition to the loan business, taxpayer engaged in the sale and rental of real estate, the insurance business, the hardware business, and a building supply business.

On his income tax returns for the years in issue, taxpayer reported on the first page of such returns the following amounts of income from the indicated sources, totalling $20,711.15 for the taxable years 1946–1950:

| Source | 1946 | 1947 | 1948 | 1949 | 1950 |
|---|---|---|---|---|---|
| Warner Bros. & Others | $47.20 | | | | |
| Insurance Commissions Net | 1,304.17 | $1,407.01 | $1,480.82 | $1,550.78 | $1,670.40 |
| Real Estate Commissions Net | 702.00 | 702.00 | 690.00 | 700.00 | 1,110.00 |
| City Board of Education and Theatre | 747.00 | 179.00 | 385.00 | 146.00 | |
| Other Fees and Commissions | | | | 560.00 | |
| Dividends | 32.00 | | | | |
| Interest | 1,155.00 | 811.77 | 1,777.00 | 1,777.00 | 1,777.00 |
| Total Adjusted Gross Income as reported | 3,987.37 | 3,099.78 | 4,332.82 | 4,733.78 | 4,557.40 |

intent to evade taxes within Sec. 293(b), 26 U.S.C. (1952 ed.) are fully supported. In so holding we accept taxpayer's contention that the mere proof

The remaining pages of the taxpayer's returns were left blank. He did not attach any schedules to his return showing his computations of the net amounts appearing on page one of such returns.

The Commissioner's revenue agents determined that the taxpayer had received income during the years in issue from many sources not shown on his returns and in a total amount far in excess of that shown on his returns.

At the hearing in the Tax Court, the taxpayer conceded that he had received income from various sources and in the amounts totalling $113,419.95 for the taxable years involved as follows:

|  | 1946 | 1947 | 1948 | 1949 | 1950 |
|---|---|---|---|---|---|
| Rental | $1,818.00 | $1,630.00 | $1,336.00 | $1,778.00 | $2,162.00 |
| Net Interest | 3,816.62 | 10,762.64 | 13,940.25 | 5,488.73 | 16,277.01 |
| Contract Sales | 376.81 | 1,228.69 | 1,582.41 | 1,439.45 | 1,175.15 |
| Appraisals | 205.00 | 160.00 | 50.00 | 155.00 | 220.00 |
| Under-written by self | | 39.23 | 75.52 | 289.17 | 1,713.69 |
| Real Estate Sales | 8,982.03 | 909.77 | 1,507.32 | 1,119.50 | 3,415.35 |
| Rental Commissions | 139.99 | 164.00 | 146.35 | 157.34 | 136.84 |
| Insurance Commissions | 2,205.53 | 3,286.20 | 2,460.00 | 3,107.56 | 2,552.00 |
| Opp Hardware Partnership | | | | | 6,227.67 |
| Building Supply Co | | 3,516.47 | 857.33 | 3,945.89 | 4,432.24 |
| Sale of Timber | | | | 5,007.00 | |
| Salaries | 794.20 | 179.00 | 385.00 | 146.00 | |
| Dividends | 32.00 | | | | |
| Total | 18,370.18 | 21,876.00 | 22,340.18 | 18,126.64 | 32,706.95 |

The parties stipulated that the taxpayer incurred total expenses in his various business activities as follows: $7,272.88 for the taxable year 1946, $8,780.55 for 1947, $11,859.25 for 1948, $14,065.13 for 1949, and $14,436.30 for 1950.

The percentages by which taxpayer conceded that he understated the net amount of his adjusted gross income are as follows: 178% for 1946, 322% for 1947, 142% for 1948, none for 1949, and 301% for 1950.

In addition to the amounts of income which taxpayer conceded he received, as indicated above, the Commissioner determined that he received additional amounts of income from the sale of ten parcels of real estate, from commissions as a real estate sales agent, and from interest from his loan business. The parties stipulated how the gains, if any, from each of the ten real estate sales were to be taxed, that is, whether as ordinary income or as long-term capital gains.

As to the interest income which constituted a major part of his receipts, petitioner's books and records as disclosed to the revenue agents were wholly inadequate to determine the correct amount of gross interest income, bad debts, and recoveries thereon, on which petitioner relied during the years in issue. The parties stipulated the amounts which petitioner recovered each year on bad debts which had been previously written off and also stipulated the amount of bad debts which he was entitled to deduct from gross interest income each year.

Prior to the hearing petitioner employed a certified public accountant to compute the amount of net interest income which he had received from his loan business during the years in issue but the accountant had no more records to work with than did the respondent's agent. His determination of the amount of gross interest income which petitioner received was less than that returned by the respondent. The Tax Court, however, found:

"We have carefully considered the computation of petitioner's accountant which were submitted into evidence as well as the accountant's testimony. On the basis of all the evidence before us we conclude that the amount of gross interest income determined by the respondent, in view of the stipulation with respect to the allowances for bad debts and recoveries thereon, was correct and that petitioner received net interest in-

that there was a substantial understatement of income for a particular year or years is not of itself sufficient to sustain the respondent's burden of proving fraud. Such proof is, however, evidence which may be looked to and because of the extreme nature of the discrepancies in this case, these facts alone have strong probative force. But there is more, much more to this case than mere discrepancies. There is the failure of the taxpayer to keep books. There are the missing records, and above and beyond all that, and this is taxpayer's Achilles' heel, there is the complete, the fatal, failure of taxpayer to furnish a reasonable, or any explanation consistent with a real purpose to report all his income and pay all the taxes due by him and inconsistent with the intent to evade payment.

As the Tax Court very well puts it in its opinion, "as evidenced by the amounts of income which petitioner earned, he was a man of considerable business acumen and one of more than average intelligence. He offered no plausible explanation which would tend to excuse his failure to report the large sums of income which he in fact received. The amounts by which he understated his income are too large and such understatements occurred consistently over too long a period of time for us on this record to believe that they were due to anything other than a deliberately fraudulent attempt to evade taxes. In addition to taxpayer's consistently large understatement of income, we believe that his method of reporting income was a de-

liberate attempt to conceal the true amount thereof. His returns each year showed only net amounts of income from some three to six sources. He now concedes that he received income during the years in issue from nine to eleven different sources * * * sums greatly in excess of the amounts reported from those sources during the years indicated. That fact, together with his reporting identical amounts of income from those sources for two or three years and his failure to report excessive amounts of income from other sources indicate a willful disregard of his duty to report the true amount of his income."

These findings and conclusions are not without evidence to support them, they are not shown to be clearly erroneous, indeed, we think that they are correct. The Taxpayer on the stand testified at considerable length and while he did, in answer to a leading question of his counsel, categorically deny that he made the returns with an intent to evade the tax, he nowhere attempted to make a reasonable, or indeed any, explanation as to why he had done what he did. Under the circumstances which showed not mere carelessness or oversight but a positive evasion of his obligation and duty to account for and report his income, it was incumbent upon him to make some reasonable explanation of the course pursued by him, and he wholly failed to do this.

The judgment was right. It is affirmed.

---

come in the amount set forth in our findings of fact."

These as stated by the tax court are:

| | |
|---|---|
| 1946 — | $ 8,678.37 |
| 1947 — | 14,710.46 |
| 1948 — | 17,580.27 |
| 1949 — | 13,884.94 |
| 1950 — | 22,188.03 |

On the basis of the facts stipulated by the parties and the additional findings made herein, petitioner's adjusted gross

income during the years in issue and the percentage amount by which he understated his income are as follows:

| | Adjusted Gross Income | Percentage of Understatement |
|---|---|---|
| 1946 | $19,583.13 | 391 |
| 1947 | 17,593.27 | 467 |
| 1948 | 14,180.95 | 227 |
| 1949 | 13,507.72 | 185 |
| 1950 | 24,731.67 | 443 |