**In re Thomas A. GRAHAM and Elizabeth M. Graham, Debtors.**

**Thomas A. GRAHAM and Elizabeth M. Graham, Plaintiffs,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 87–03092F.**
**Adv. No. 88–0630F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 14, 1989.

Spencer Ervin, Jr., Leslie Beth Baskin, Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., for the debtors/plaintiffs, Thomas A. Graham and Elizabeth M. Graham.

Stuart Glick, Dept. of Justice, Washington, D.C., H. Stephen Kesselman, District Counsel, I.R.S., Philadelphia, Pa., for defendant I.R.S.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

Christine C. Shubert, Tabernacle, N.J., trustee.

## MEMORANDUM OPINION

### BRUCE I. FOX, Bankruptcy Judge:

The debtors have brought an adversary proceeding against the Internal Revenue Service ("IRS"), seeking a determination of the dischargeability through bankruptcy of certain tax liabilities under 11 U.S.C. § 523(a)(1)(C). While the IRS initially challenged nondischargeability for these liabilities against both debtors, at the trial on the matter it agreed that taxes for the years 1969 through 1972 were dischargeable as to debtor Elizabeth Graham, and that tax liabilities for the years 1973 through 1975 were, in fact, dischargeable as to both debtors.[1] What remains for decision, then, is whether the tax liability for Thomas Graham is nondischargeable for the period

1969 through 1972. The IRS' position is twofold: that both the doctrine of estoppel and 11 U.S.C. § 505(a)(2)(A) bar relitigation, and that the liability is nondischargeable pursuant to § 523(a)(1)(C). The following facts are relevant to the dispute *sub judice*.

### I.

The debtor, Thomas Graham, was the president, majority shareholder and chief operating officer of a corporate entity known as Meridian Engineering, Inc. for the years in question. Founded in 1965 by the debtor, who holds a degree in civil engineering, Meridian was a design, engineering and construction management firm. The company during the years at issue had permanent offices in Florida, New York City and Philadelphia; as the debtor's responsibilities were in marketing and sales, he was required to travel between these offices with some frequency. The debtor recalls also making at least two additional trips on behalf of Meridian during this time: one to the Caribbean, and one to Europe.

Meridian ceased operating in the late 1970's. In, approximately, February 1980, the IRS issued and mailed to the debtors, pursuant to 26 U.S.C. § 6212, a notice of tax deficiency covering the years 1969 through 1972. The purpose of this notice was to inform the debtors that the IRS had determined a delinquency in their reported federal income tax, alleging that they had received unreported income from Meridian.

As explained more fully in an earlier reported decision in this proceeding, *In re Graham*, 94 B.R. 386 (Bankr E.D.Pa. 1988),[2] the debtors challenged the deficiency notice in tax court. The tax court held that the deficiency notice was not invalid, and entered judgment against the debtors and in favor of the IRS in the total amount

---

1. Conversely, the debtors acknowledge that taxes owed for the years just prior to their bankruptcy filing in 1987 are made nondischargeable by virtue of 11 U.S.C. §§ 507(a)(7) and 523(a)(1)(A).

2. On December 23, 1988 I entered a Memorandum Opinion and Order denying the defendant IRS' motion for what it denominated "Partial Summary Judgment." *In re Graham*, 94 B.R. 386 (Bankr.E.D.Pa.1988) (discussing issue preclusion and § 505(a)(2)(A)).

of $285,529.00.[3] This figure includes an additional assessment pursuant to 26 U.S.C. § 6653(b), which empowers the IRS to make such additions if the tax underpayment is fraudulent.

## II.

■ The threshold question (and the one I addressed in the government's motion for partial summary judgment) is whether debtor Thomas Graham is collaterally estopped to dispute that his tax liabilities for years 1969 through 1972 are nondischargeable under 11 U.S.C. § 523(a)(1)(C) by virtue of the tax court's prepetition ruling. Pursuant to § 523(a)(1)(C):

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

As I observed in *In re Graham*, 94 B.R. at 389, the principle of collateral estoppel requires that later courts honor the first decision of a matter that had been actually litigated. *Rider v. Pennsylvania*, 850 F.2d 982, 989 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). The Third Circuit has established a four part text to determine whether a debtor is precluded from relitigating issues related to dischargeability. This test requires that:

... (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by valid and final judgment, and (4) the determination must have been essential to the prior judgment.

Matter of Ross, 602 F.2d 604, 608–09 (3d Cir.1979). *Accord, e.g., In re Gaebler*, 88 B.R. 62 (E.D.Pa.1988); *In re Cobley*, 89 B.R. 446 (Bankr.E.D.Pa.1988).

In resolving the motion for summary judgment I carefully reviewed the record made by the court issuing the prior judgment, *Matter of Ross*, 602 F.2d at 608; *Cobley*, 89 B.R. at 448, and found that the tax court had not deliberated upon, nor had the debtors raised, the issue of fraud. *In re Graham*, 94 B.R. at 388–91. I therefore concluded that the issue of fraud had not been litigated or determined by valid and final judgment by the prior court: "In sum, the question of whether the debtors filed a fraudulent tax return or willfully attempted to evade or defeat such tax for years 1969 to 1972 has not been decided for purposes of issue preclusion." *Id.*, at 391.

I am not persuaded by the government that this earlier conclusion should now be disturbed. In now pressing its argument that the issue of fraud had been litigated before the tax court, the government, in its posttrial brief at 19, confuses the concept of issue preclusion (or collateral estoppel) with that of claim preclusion (or *res judicata*). *See generally Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988). Claim preclusion, of course, precludes parties whose action has reached final judgment on the merits from relitigating issues "that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The government asserts that the debtor either actually litigated the issue of fraud before the tax court or had the opportunity to do so, and that therefore he is barred by the principle of claim preclusion from revisiting the issue of fraud.

■ However, I must disagree. As I stated in *In re Graham*, this adversary

3. The tax court entered an order on February 28, 1984 that provided in pertinent part: ORDERED AND DECIDED that there are deficiencies and additions to petitioners' federal income taxes for the years and amounts as follows:

| Year | Deficiency | Additions to Tax/ Sec. 6653(b) |
|------|-----------|-------------------------------|
| 1969 | $34,301.00 | $17,151.00 |
| 1970 | 62,689.00 | 31,345.00 |
| 1971 | 64,849.00 | 32,425.00 |
| 1972 | 28,513.00 | 14,256.00 |

*See* Ex. G–J; *In re Graham*, 94 B.R. at 387.

proceeding seeks a determination of dischargeability of a debt in bankruptcy, a question clearly not before the tax court in 1984. Indeed, the concept of claim preclusion does not apply in dischargeability proceedings in bankruptcy. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See also In re Cobley; In re Borbidge*, 81 B.R. 332 (Bankr.E.D.Pa.1988). Thus, the entry of a fraud penalty by the tax court, while disposing of the issue of liability,[4] cannot result in claim preclusion on the issue of nondischargeability. *Brown v. Felsen.* Additionally, as discussed more fully in my earlier memorandum opinion, the tax court did not adjudicate the question of whether the debtor committed fraud in submitting his tax returns. That is, the debtor had stipulated to not contesting a fraud penalty in tax court, and this cannot result in preclusion of the issue. *In re Behr*, 42 B.R. 922 (E.D.Pa. 1984). *Accord, In re McCall*, 76 B.R. 490 (Bankr.E.D.Pa.1987) (the prior decision must have included factual determinations necessary to establish fraud). Thus, I find that the adversary proceeding before me is not subject to either claim or issue preclusion, and that the issue of fraud remains for decision in this action to determine dischargeability.

### III.

■ The remaining question centers upon whether the debtor should be discharged from federal income tax liability for any of the years 1969 through 1972. Governing this question is § 523(a)(1)(C) of the Bankruptcy Code which, as noted above, prohibits the discharge of a debt that is a tax liability "with respect to which the debtor made a fraudulent return or

willfully attempted in any manner to evade or defeat such tax." The burden of proving fraud under § 523(a)(1)(C) rests upon the government, which sustains the burden only by establishing clear and convincing evidence of the fraud. *See Stoltzfus v. United States*, 398 F.2d 1002, 1005 (3d Cir.1968), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969); *Cirillo v. Commissioner*, 314 F.2d 478, 482 (3d Cir. 1963); *In re Kirk*, 98 B.R. 51, 55 (Bankr.M. D.Fla.1989). *See also Raley v. Commissioner*, 676 F.2d 980 (3d Cir.1982). The fraud must be so proven for each tax year in question. *Wilson v. Commissioner*, 76 T.C. 623, *modified on other gnds*, 77 T.C. 324 (1981). The evidence must clearly and convincingly show that the debtor acted deliberately (that is, with knowledge of the falsehood of the tax return) and with an intent to evade the tax liability. *Considine v. United States*, 645 F.2d 925, 929, 227 Ct.Cl. 77 (1981), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982); *Stoltzfus v. United States*, 398 F.2d at 1004; *Moore v. United States*, 360 F.2d 353, 355 (4th Cir.1965), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967); *In re Kirk*, 98 B.R. at 55.[5] The existence of fraud is a question to be determined by a consideration of the entire record. *Stratton v. Commissioner*, 54 T.C. 255, 282, *modified on other gnds*, 54 T.C. 1351 (1970). As direct proof of an intention to evade taxes may be difficult to establish, it may depend upon circumstantial evidence and reasonable inferences properly drawn from the evidence of record. *Korecky v. Commissioner*, 781 F.2d 1566 (11th Cir. 1986); *Toussaint v. Commissioner*, 743 F.2d 309 (5th Cir.1984); *Stone v. Commis-*

---

4. I am mindful that the Bankruptcy Code provides that this court may not determine

   the amount or legality of a tax fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

   11 U.S.C. § 505(a)(2)(A). This section therefore bars me from determining the correct amount of the underlying tax debt owed to the IRS, as that determination has been made by the United States Tax Court.

5. Of course, underlying this test of a fraudulent return or willful attempt to evade tax is the requirement that the debtor underpaid his or her true tax obligation. *See Moore v. United States*, 360 F.2d at 355. In the instant matter the debtor does not dispute this allegation, but argues that he acted without the requisite fraudulent knowledge or intent to defeat dischargeability, and that the government did not meet its burden on this issue.

*sioner,* 56 T.C. 213 (1971). *See In re Kirk,* 98 B.R. at 55.[6]

■ The evidence presented by the government to support its position is, I find, somewhat thin. Central to the government's argument is its assertion that the debtor received compensation from Meridian Engineering, Inc. in addition to his regular annual salary during the tax years at issue, which additional compensation was not reported by the debtor on his individual tax returns. (Obviously, the government argues that these omissions were deliberate, knowing, and intended to defeat the tax liability.) The government's evidence of the additional compensation comes from information contained in a document entitled "Protest to Proposed Deficiencies in Income Taxes for Calendar Years 1969, 1970, 1971 and 1972," which was admitted into evidence as Ex. G–Q. This document, prepared in 1976 by counsel for Meridian[7] was submitted to the District Director of Internal Revenue in Philadelphia, Pennsylvania and was created to protest certain tax deficiencies proposed by the IRS against Meridian Engineering, Inc. According to this document, Meridian made "reasonable additional compensation" to the debtor, in addition to his annual salary, in the following amounts:

| Year | Regular Salary | Additional, other Compensation | Total Income Received |
|------|------|------|------|
| 1969 | $ 32,971.00 | $42,079.00 | $ 75,050.00 |
| 1970 | 39,553.00 | 80,181.00 | 119,734.00 |
| 1971 | 45,351.00 | 72,701.00 | 118,052.00 |
| 1972 | 119,078.00 | 27,792.00 | 146,870.00 |

Ex. G–Q, at 70. The government posits that this additional compensation was unreported by Thomas Graham, and thus was hidden income received by the debtor.

The parties contest the evidentiary weight I should accord Ex. G–Q for a variety of reasons. I find that I need not address these concerns with much detail, for I note that the proffered evidence of unreported payment is not consistent with the deficiencies established by the tax court in *Graham v. Commissioner,* 82 T.C. 299 (1984), *aff'd,* 770 F.2d 381 (3d Cir.1985).

The tax adjustments made by the IRS to the debtor's income for the taxable years 1969 through 1972 was for "unreported dividend income received from Meridian." *Graham v. Commissioner,* 82 T.C. at 300. The deficiencies in and additions to the debtor's income as determined by the tax court were as follows:

| Year | Deficiency | Addition to tax Section 6653(b) |
|------|------|------|
| 1969 | $34,301.00 | $17,151.00 |
| 1970 | 62,689.00 | 31,345.00 |
| 1971 | 64,849.00 | 32,425.00 |
| 1972 | 28,513.00 | 14,256.00 |

*See In re Graham,* 98 B.R. at 387. Again, the tax liabilities determined by the tax court are binding upon me, as I look only into the issue of fraud for purposes of determining dischargeability. I must note, then, that the evidence relied upon by the government to prove the debtor's fraud, that found within Ex. G–Q, does not conform to the debtor's tax liability as described by the tax court. The following chart compares the tax court's findings and order of tax liabilities and the supposed admissions of the debtor and his additional, unreported income, Ex. G–Q:[8]

---

6. Those facts and circumstances which will establish fraud for purposes of § 523(a)(1)(C) are the same as those which allow the imposition of a fraud penalty pursuant to the Internal Revenue Code, 26 U.S.C. § 6653. *In re Kirk,* 98 B.R. at 55, *In re Harris,* 49 B.R. 223, 226 (Bankr.W.D. Va.1985), *modified on other gnds,* 59 B.R. 545 (Bankr.W.D.Va.1986). Thus, the cases arising under the latter federal statute and discussing the issue of fraud are relevant to the question *sub judice.*

7. The law firm that prepared this document has not appeared in the controversy before me.

8. Exhibit G–Q does provide a breakdown of the "other compensation" allegedly paid annually to the debtor. At pages 57–58 there is a list of expenditures made by Meridian, and claimed to be properly deductible by it, which expenditures are additional compensation to the debtor. Pages 96 and 97 discuss reimbursement of travel expenses to the debtor, charitable contributions, and political contributions and payments to government officials. On page 60, Meridian presents a table for the years in question of the source of the "additional compensation" paid. The sums listed for each year under the categories entitled "Exhibits B–I" (referring to page 59, a summary of items of additional compensation), "Administrative Travel," and "other" (representing "the portion of [the debtor's] 1972 compensation treated as unreasonable by the Revenue Agent," Ex. G–Q at 60) do not correspond in any apparent way with the amounts declared as unreported for each of the four years by the tax court.

| Year | Tax Court finding of Deficiency | Ex. G–Q's expression of other compensation |
|------|--------------------------------|--------------------------------------------|
| 1969 | $34,301.00 | $42,079.00 |
| 1970 | 62,689.00 | 80,181.00 |
| 1971 | 64,849.00 | 72,701.00 |
| 1972 | 28,513.00 | 27,792.00 |

The discrepancies between these reports are unexplained by the government. It is not shown that the tax court utilized the information contained in Ex. G–Q when making its determination involving the debtor's tax liability, based on unreported dividend income. There is no nexus drawn between any payments discussed in Ex. G–Q and the sums declared unreported by the tax court. The government leaves it for me to speculate as to the reasons for the discrepancies, and also as to the basis of the underreportage. I cannot even assess the debtor's suggestion (and the government's denial) that the unreported deficiencies were reimbursements for costs, which pursuant to IRS regulation are not reportable income. *See* IRS Regulation § 1162–17(b)(1).[9]

To carry its burden in proving fraud the government could have presented evidence tending to show that the debtor did not, in fact, receive reimbursements for expenses charged to Meridian Engineering. At some past time the government obviously was in possession of documents that might have supported its position, yet none were introduced in evidence. All that is before me now is Ex. G–Q. That document was prepared on behalf of Meridian Engineering and not the debtor, and discussed the tax liabilities of the corporate entity alone. Indeed, the outcome of Meridian's protest to the IRS' proposed deficiencies was not even made clear in the record before me.

The government's position ultimately must become that an individual receiving such a large amount of additional income annually (when compared with the individual's annual salary) had to realize that such additional income is reportable, and that to omit that income from one's tax return consistently, over time, amounts to a fraudulent attempt to evade taxes.[10] I cannot agree that this conclusion necessarily follows. Accepting as true the position that the debtor received in each of these four years considerably more income than he reported, as determined by the tax court, I nonetheless must be presented with evidence that is clear and convincing in order to conclude the debtor acted fraudulently when he did not report its receipt to IRS.[11]

For purposes of determining whether a penalty assessment under the civil fraud provisions of the Internal Revenue Code is proper, courts have identified certain taxpayer activities (various kinds of circumstantial evidence) as "badges of fraud." These include large understatements of income made consistently over time, *e.g., Lollis v. Commissioner*, 595 F.2d 1189, 1191 (9th Cir.1979); *Baumgardner v. Commissioner*, 251 F.2d 311, 322 (9th Cir.1957); *but see Woodham v. Commissioner*, 256 F.2d 201, 203–04 (5th Cir.1958) (substantial understatement is not sufficient to sustain burden of proving fraud, but extreme discrepancies may have strong probative force); the failure to keep adequate records, *e.g., Estate of Mazzoni v. Commissioner*, 451 F.2d 197, 202 (3d Cir.1971); the failure to file tax returns, *Granado v. Commissioner*, 792 F.2d 91 (7th Cir.1986), *cert. denied*, 480 U.S. 920, 107 S.Ct. 1378,

9. At trial the debtor implied that expenses he charged to Meridian for which he had been repaid and which were disallowed by the IRS were the source of the underreporting. *See also* posttrial memorandum in support of debtor, p. 7 n. 4. The debtor did not, however, present evidence to support this point.

10. There is no evidence to show that the debtor did not file his individual tax returns for each of the years 1969 through 1972 in a timely fashion. However, even a finding of a willful failure to file income tax returns is insufficient to meet the clear and convincing standard on which a finding of fraud must be based. *Raley v. Com-*

*missioner*, 676 F.2d at 983. This is true even if the failure to file continues over an extended period of time. *Marsellus v. Commissioner*, 544 F.2d. 883 (5th Cir.1977).

11. The debtor stated that he relied upon the professional advice of an accountant, to whom he gave all necessary information for the preparation of his returns, which the accountant then prepared. Of course, the responsibility to file a correct tax return rests with the taxpayer, but the failure to file a correct return does not necessarily constitute fraud. *Davis v. Commissioner*, 184 F.2d 86, 87 (10th Cir.1950).

94 L.Ed.2d 692 (1987), *but see Raley v. Commissioner*, 676 F.2d 980 (3d Cir.1980) (mere failure to file returns does not show the specific intent to defraud by taxpayer); implausible or inconsistent behavior on the part of the taxpayer, *e.g.*, *Agnellino v. Commissioner*, 302 F.2d 797, 801 (3d Cir. 1962), concealing assets, *e.g.*, *Ruark v. Commissioner*, 449 F.2d 311, 312–13 (9th Cir.1971); *Agnellino v. Commissioner*, 302 F.2d at 801; and the failure to cooperate with federal taxing authorities, *e.g.*, *Powell v. Granquist*, 252 F.2d 56, 61 (9th Cir. 1958). *See generally Edelson v. Commissioner*, 829 F.2d 828 (9th Cir.1987); *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206 (5th Cir.1978). Here, the government argues that it has sustained its burden where it is shown that large discrepancies exist between real taxable income and reported income over many years. The government's evidence is directed solely towards proving these discrepancies; it argues that this circumstantial evidence alone is sufficient to allow me to find fraud. I must respectfully disagree.

In none of the cases cited by the government (or found through my research) has the mere fact of discrepancies been sufficient to a finding of fraud, even where those differences are large and repeated over time. In fact, I find that the cases relied upon by the government tend to support the legal principle that "the mere proof that there was a substantial understatement of income for a particular year or years is not of itself sufficient to sustain the [government's] burden of proving fraud," *Woodham v. Commissioner*, 256 F.2d at 203–04, for in each of the cases cited the courts found other indicia of fraud by way of circumstantial evidence, none of which is apparent in the matter *sub judice*. *See also Loftin & Woodard, Inc. v. United States*, 577 F.2d at 1239; *Merritt v. Commissioner*, 301 F.2d 484, 487 (5th Cir.1962); *Davis v. Commissioner*, 184 F.2d 86, 87 (10th Cir.1950) (each holding that consistent understatements of reported income cannot give rise to a finding of fraud).

For example, in *Shaw v. Commissioner*, 252 F.2d 681, 682 (6th Cir.1958) the Court of Appeals noted that the taxpayer had admitted to destroying his books and records each year, after his income tax returns had been prepared. This failure to keep and retain adequate records added to the court's finding of fraud. *Accord, Lollis v. Commissioner*, 595 F.2d at 1192 (inadequate or non-existent records a "badge of fraud"); *Schwartz v. Commissioner*, 33 Tax Ct.Mem.Dec. (CCH) 1085, 1091 (1974) (taxpayer failed to produce records, thereby not cooperating with and indeed obstructing an investigation by the IRS). Similarly, in *Rogers v. Commissioner*, 111 F.2d 987, 989 (6th Cir.1940) the court agreed that there had been taxpayer fraud where there were discrepancies of 100% and more between real net and reported income for three successive years, plus evidence of the taxpayer's prior criminal conviction for embezzlement of municipal funds. *See also Kramer v. Commissioner*, 389 F.2d 236 (7th Cir.1968) (in proving underreporting by net worth analysis, government satisfactorily proved nonexistence of alleged substantial cash hoard); *Kalil v. Commissioner*, 271 F.2d 550, 551 (5th Cir.1959) (taxpayer's underreported exceptionally large amounts of income for three successive years, but also admitted that in their liquor business they routinely made sales for prices in excess of ceiling prices then established by the government, in violation of the law); *Brooks v. Commissioner*, 82 T.C. 413, 432–33 (1984), *aff'd without op.*, 772 F.2d 910 (9th Cir.1985) (government utilized net worth analysis to show underreporting of taxes; taxpayer gave inadequate and inconsistent explanations for his alleged cash reserve, which the government fairly showed to be non-existent by other evidence); *Habersham–Bey v. Commissioner*, 78 T.C. 304, 312–14 (1982) (failure to file returns, coupled with numerous knowingly wrongful claimed tax exemptions, indicated taxpayer's fraudulent evasion of taxes).

Here, the government rests its case on a too slim record. There is no allegation or evidence of inadequate bookkeeping or retention of records, *Estate of Mazzoni v. Commissioner*, no showing of implausible

or inconsistent behavior on the part of the taxpayer, *Agnellino v. Commissioner,* 302 F.2d at 801, no allegation that the debtor overstated his allowed deductions, *Loftin & Woodard, Inc.,* 577 F.2d at 1238, or attempted in any way to conceal assets, *Estate of Upshaw v. Commissioner,* 416 F.2d 737, 741 (7th Cir.1969), *cert. denied,* 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970). The debtor apparently filed his returns in a timely fashion, and intimates a plausible reason for the discrepancies.

Thus, I must conclude that the government failed to meet its heavy burden, *Cirillo v. Commissioner,* 314 F.2d at 482, and that debtor Thomas Graham's tax liabilities for the years 1969 through 1972 are dischargeable.

An appropriate order shall be entered.