**In re James IRVINE, IV, Debtor.**

**James IRVINE, IV, Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 92–14817.

Adv. No. 92–1217.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 6, 1994.

N. Curtis Ward, Bruce E. Brownstein, Butera, Beausang, Moyer & Cohen, Philadelphia, PA, for debtor and plaintiff.

Carol C. Priest, U.S. Dept. of Justice, Washington, DC, for defendant.

Joseph Minni, Philadelphia, PA, U.S. Trustee.

## MEMORANDUM OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

The Debtor initiated this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt (the "Complaint") on December 3, 1992. The issue before the Court is whether certain income tax deficiencies assessed by the Internal Revenue Service (the "IRS") against the Debtor in the amount of $262,389.00 plus interest and penalties (the "Tax Debt") are excepted from discharge under § 523(a)(1)(C) of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 523(a)(1)(C). After a hearing on December 10, 1993 and for the reasons set forth below, we conclude that the Tax Debt is not excepted from discharge under § 523(a)(1)(C).

### BACKGROUND.

The Debtor filed a voluntary chapter 7 petition on August 6, 1992 and received a discharge on November 23, 1992. The IRS was listed as a creditor on the Debtor's Schedules and Statement of Financial Affairs. The IRS assessed income tax deficiencies against the Debtor for his 1987 and 1988 tax years in the amount of $160,877 and $101,512, respectively, plus penalties and interest. The Debtor consented to the assessment. The income tax deficiencies arose out of the Debtor's failure to report as income $780,000 he embezzled from his employer during the period from July 1987 through May 1988.

The Debtor entered a guilty plea in the United States District Court for the Eastern District of Pennsylvania on October 18, 1988 to two counts of bank fraud, admitting that as assistant branch manager of Commonwealth Federal Savings & Loan ("Commonwealth") he embezzled $780,000 over the time period in question. The Debtor did not keep records of the amount of funds he embezzled.

The Debtor claimed that at the time he embezzled the funds he was suffering from a compulsive gambling disorder. The Debtor used all of the funds he embezzled to pay his bookie to whom he was indebted at the beginning of the embezzlement scheme in the approximate amount of $100,000.[1]

The Debtor testified that he always prepared his own tax returns using a standard IRS 1040 EZ form and never consulted with a tax professional. The Debtor's 1987 and 1988 tax returns are dated April 8, 1988 and February 7, 1989, respectively. Government Exhibits C and D. The 1988 tax return was filed two days prior to the Debtor's incarceration on the bank fraud conviction. The Debtor did not report the embezzled funds as income in his 1987 or 1988 tax returns. The Debtor testified that he did not know that the embezzled funds should have been reported as income on his 1987 and 1988 tax returns.[2] The Debtor first learned that the embezzled funds should have been reported as income when he received a certified letter from the IRS in prison assessing the deficiency.

The Debtor's education and employment history are relevant to the issues before the Court. The Debtor completed three trimes-

---

**1.** The Debtor's bookie allowed him to continue to bet on sporting events if he paid the bookie $10,000 per week. The Debtor placed bets on a daily basis and his wagers during the period in question increased as he attempted to recoup his losses. At the time the embezzlement scheme was discovered in May, 1988, his debt to the bookie had increased to approximately $350,000.

**2.** The IRS pointed out that Debtor raised for the first time in the context of this litigation that he did not know that the embezzled funds should have been reported as income on his 1987 and 1988 tax returns. At the time that the Debtor consented to the assessment, the IRS claims that the Debtor's attorney in the criminal matter stated that the Debtor did not report the embezzled funds because the gambling losses offset any income from the embezzled funds. The Debtor acknowledged his statement but further testified that he did not even consider whether the embezzled funds were taxable. The fact that the Debtor did not raise this argument at the time of the assessment does not prevent him from doing so in this litigation. Nor is the Debtor's consent to the assessment an admission that he knew at the time of filing his 1987 and 1988 returns that the embezzled funds were taxable.

ters at Drexel University taking freshman and prerequisite courses including basic accounting and economics. The Debtor did not take any tax courses. The Debtor participated in a co-operative program pursuant to which he took courses for six months and worked for six months. As part of the cooperative program, the Debtor was employed as a teller at First Family Federal Savings & Loan, now Commonwealth. The Debtor remained at Commonwealth rather than return to Drexel and eventually was promoted to the position of assistant branch manager. The Debtor was employed by Commonwealth for approximately 8 years.

As a teller, the Debtor's duties included waiting on customers and handling deposits and withdrawals. As assistant branch manager, the Debtor's duties included opening new accounts, handling customer and teller problems and acting as custodian for the vault. The Debtor received no training in tax matters while employed by Commonwealth.

From June 1988 until his sentencing in January 1989, the Debtor sought professional treatment for his compulsive gambling disorder from Dr. Jack Gomberg, a psychiatrist. The Debtor met with Dr. Gomberg on 15 occasions. Dr. Gomberg initially diagnosed the Debtor as suffering from a pathological gambling disorder, an impulse illness characterized by irresistible pathological impulses to gamble, with associated cocaine and alcohol abuse and depression.[3] Additional meetings with the Debtor confirmed Dr. Gomberg's diagnosis. The Debtor's primary symptom was his preoccupation with gambling which was tied to his pathological impulse to gamble.

### DISCUSSION

The parties agree that this Court has jurisdiction over this adversary proceeding and that this proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(I). The parties also agree that the IRS bears the burden by a preponderance of the evidence of proving that the Tax Debt is nondischargeable under § 523(a)(1)(C). *Grogan v. Garner*, 498 U.S. 279, 289–90, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991); *Graham v. Internal Revenue Service (In re Graham)*, 973 F.2d 1089, 1098–99 (3d Cir.1992).

The Tax Debt will be excepted from discharge under § 523(a)(1)(C) if the IRS can prove *either* that the Debtor made a fraudulent return *or* willfully attempted in any manner to evade or defeat a tax. The standards for proving "fraud" and "willful attempt" under § 523(a)(1)(C) are not the same. *Lilley v. Internal Revenue Service (In re Lilley)*, 152 B.R. 715, 720–21 (Bankr. E.D.Pa.1993).

The facts and circumstances required to prove fraud under § 523(a)(1)(C) are the same as those required to prove a civil fraud penalty under the Internal Revenue Code, 26

**3.** The IRS objected to Dr. Gomberg testifying as an expert with respect to the Debtor's compulsive gambling disorder. Dr. Gomberg, a practicing psychiatrist since 1977, presented an impressive list of credentials outlining his experience in the treatment of various emotional and psychological disturbances including substance abuse and compulsive, or pathological, gambling. Dr. Gomberg admitted that the treatment of gambling disorders does not comprise a major part of his practice but that he has treated eight to nine gambling disorder cases, including the Debtor's, in his career. The most effective treatment for compulsive gambling is a subject of debate among professionals. The most popular treatment includes twelve step programs and support groups similar to those used in the treatment of substance abuse. Dr. Gomberg has written and practiced extensively in the area of substance abuse. Accordingly, the Court found that Dr. Gomberg, an expert on addictive behaviors, had presented sufficient credentials and experi-

ence to qualify as an expert with respect to pathological gambling.

We note, however, that the Court's decision on the issues before it in this proceeding was not based upon Dr. Gomberg's expert testimony. Dr. Gomberg's testimony at the Debtor's criminal trial for embezzlement focused on the Debtor's diminished capacity and judgment resulting from the gambling disorder. The Court's conclusion herein is not based upon an argument that the Debtor's alleged diminished capacity resulting from the gambling disorder prevented him from forming or performing, as the case may be, the fraudulent intent or willful behavior required under § 523(a)(1)(C). *See generally Carmel v. United States (In re Carmel)*, 134 B.R. 890, 907 (Bankr.N.D.Ill.1991) (the bankruptcy court found as a matter of law that a compulsive gambling disorder cannot be the basis of a defense to a non-gambling offense such as the fraudulent non-payment of taxes).

U.S.C. §§ 1 *et seq.* (the "IRC")[4]. *See McKay v. United States,* 957 F.2d 689, 691 (9th Cir.1992). Civil fraud may be established under the IRC without a showing of "evil motive or sinister purpose". *Granado v. Commissioner of Internal Revenue,* 792 F.2d 91, 93 (7th Cir.1986). For the purposes of determining whether a civil fraud penalty is proper under the IRC, "courts have identified certain taxpayer activities (various kinds of circumstantial evidence) as 'badges of fraud'". *In re Graham,* 108 B.R. 498, 503 (Bankr.E.D.Pa.1989), *aff'd,* 131 B.R. 275 (E.D.Pa.1991), *vacated and remanded,* 973 F.2d 1089 (3d Cir.1992).[5] The badges of fraud include large understatements of income made consistently over time; failure to keep adequate records; failure to file tax returns; implausible or inconsistent behavior by the taxpayer; concealing assets; and failure to cooperate with taxing authorities. *Graham,* 108 B.R. at 503–504. *See also Edelson v. Commissioner of Internal Revenue,* 829 F.2d 828, 832 (9th Cir.1987); *Loftin and Woodward, Inc. v. United States,* 577 F.2d 1206, 1238–39 (5th Cir.1978); *Estate of Mazzoni v. Commissioner of Internal Revenue,* 451 F.2d 197, 202 (3d Cir.1971).

It must be noted that the "badges of fraud" are not conclusive as to the issue of fraud. They are "more or less strong or weak according to their nature and the number occurring" in a given case. *In re Sumpter,* 136 B.R. 690, 704 (Bankr.E.D.Mich.1991).

The interpretation of the willfulness requirement under the second prong of § 523(a)(1)(C) has prompted some debate among the courts. Some courts have held that the willfulness requirement under § 523(a)(1)(C) should be interpreted applying the restrictive criminal standard enunciated

by cases interpreting IRC § 7201. *See In re Gathwright,* 102 B.R. 211, 213 (Bankr.D.Or. 1989). The criminal standard for fraud under IRC § 7201 requires the willful commission of an affirmative act by the taxpayer calculated to defraud the government. *See Spies v. United States,* 317 U.S. 492, 498, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). Other courts have held that the willfulness requirement under § 523(a)(1)(C) should be interpreted using the less restrictive standard generally applied in civil cases, *i.e.,* the taxpayer voluntarily, consciously or intentionally attempted to evade taxes. *See United States v. Toti,* 149 B.R. 829, 834 (E.D.Mich.1993). The civil standard for willfulness, unlike the criminal standard, does not require a showing of a malicious or evil intent or even that the debtor committed an affirmative act but rather that the debtor knew or should have known that the taxes were due and failed to pay them.

The willfulness requirement under § 523(a)(1)(C) can be analogized to cases interpreting IRC § 6672 which imposes a one hundred percent penalty on individuals within a corporation responsible for paying withholding taxes who willfully fail to pay such taxes. *Id.* at 833. Generally, "willfulness" within the meaning of § 6672 "means a voluntary, conscious and intentional decision to prefer other creditors over the Government." *Quattrone Accountants, Inc. v. Internal Revenue Service,* 895 F.2d 921, 928 (3d Cir.1990). A responsible person under § 6672 can also act willfully if he pays other creditors with reckless disregard for whether the withholding taxes have been paid. *United States v. Vespe,* 868 F.2d 1328, 1335 (3d Cir.1989). The Third Circuit Court of Appeals stated that the "reckless disregard" standard is satisfied

---

4. Courts discussing the civil fraud penalty under the IRC frequently refer to IRC § 6653(b). Section 6653 was amended generally in 1989 to substitute provisions relating to failure to pay stamp tax for the provisions relating to additions to tax for negligence and fraud. The provisions relating to the imposition of a penalty for fraud were moved to IRC § 6663.

5. The bankruptcy court's decision in *Graham* was vacated and remanded by the Third Circuit Court of Appeals with instructions to apply the preponderance of the evidence burden of proof

standard enunciated by the Supreme Court in *Grogan.* Notwithstanding the Third Circuit Court of Appeals' remand, the bankruptcy court's discussion of "badges of fraud" was not criticized by the Court of Appeals and is helpful to our consideration of § 523(a)(1)(C). While the measurement of these badges of fraud after *Grogan* may yield a different outcome than compelled under the clear and convincing evidence standard of the cases that developed the "badges of fraud," the same criteria are nonetheless to be applied; only the weight given is different.

"if the taxpayer (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily."

*Vespe,* 868 F.2d at 1335 (quoting *Wright v. United States,* 809 F.2d 425, 427 (7th Cir. 1987)).

■ After careful consideration, we are persuaded that the interpretation of willful adopted by the Third Circuit Court of Appeals in *Quattrone* and *Vespe* in the context of § 6672 is the appropriate standard to apply in the instant matter. The proceeding before the Court is not a criminal matter requiring the application of the more restrictive criminal standard but is similar to a proceeding under § 6672. Under § 523(a)(1)(C), therefore, a debtor will be considered to have willfully attempted to evade a tax if he acted voluntarily, consciously or intentionally or with reckless disregard for whether the tax has been paid. With respect to § 523(a)(1)(C), a debtor acts with reckless disregard if he knew or should have known that the tax was due and did not pay the tax.

Since direct proof of a debtor's willful attempt to evade taxes may be difficult to establish, "circumstantial evidence and reasonable inferences" drawn therefrom may be used to establish the debtor's willfulness. *Graham,* 108 B.R. at 501. The existence of some of the badges of fraud may also indicate the debtor's willfulness under § 523(a)(1)(C). The concealment of assets is one such badge that has been found to evidence a willful evasion or defeat of taxes under § 523(a)(1)(C). *Lewis v. Internal Revenue Service (In re Lewis),* 151 B.R. 140, 146 (Bankr.W.D.Tenn.1992) (citing *Sumpter,* 136 B.R. at 701); *In re Jones,* 116 B.R. 810, 814 (Bankr.D.Kan.1990).

Here, the IRS argues that it sustained its burden under the first prong of § 523(a)(1)(C), i.e., filing fraudulent return, by showing the existence of the following badges of fraud: (1) a pattern of discrepancies over a two year period; (2) the Debtor's creation and perpetuation of a sophisticated embezzlement scheme and his position as an assistant branch manager of a bank indicat-

ing that the Debtor was a sophisticated individual who knew that the embezzled funds should have been reported on his tax returns; (3) the Debtor's filing of his own tax returns and the associated duty to determine how to properly file the tax returns; (4) the Debtor's involvement in criminal activity indicating a purposeful intent to conceal the embezzled funds; and (5) the Debtor's failure to keep records of the embezzled funds.

The IRS argues that it sustained its burden under the second prong of § 523(a)(1)(C), i.e., willful attempt to evade taxes, by way of circumstantial evidence that the Debtor kept no records of the embezzled funds and that the Debtor's behavior of successive non-reporting established a pattern which demonstrates a willful attempt to evade taxes. Further, the Debtor's position as assistant branch manager of Commonwealth and the fact that he prepared his own tax returns evidence knowledge and sophistication which are also circumstantial evidence of his willful intent to evade taxes.

■ We respectfully disagree with both contentions of the IRS. The Debtor made the same error in his 1987 and 1988 returns, *i.e.,* he failed to report the embezzled funds as income. The Debtor credibly testified that he did not know that the embezzled funds should have been reported as income and, moreover, that he did not even consider whether the embezzled funds should have been reported as income. The Debtor's behavior in 1987 and 1988 was consistent with this testimony.

Dr. Gomberg testified as a fact witness that the Debtor stated in his therapy sessions that he did not consider the embezzled funds to be his. This statement to Dr. Gomberg together with the Debtor's failure to report the embezzled funds on his tax returns in 1987 and 1988 leads credibility to the Debtor's testimony that he did not know that the embezzled funds should have been reported as income. We are not persuaded that continuation of the discrepancy over a two year period of time evidences that the Debtor engaged in a pattern of fraud or that the Debtor willfully attempted to evade paying the taxes.

We agree with the IRS that the Debtor's position as an assistant branch manager of Commonwealth and his ability to devise and perpetuate the embezzlement scheme for a period of a year and a half indicate that the Debtor is not an "ignorant" person. These facts, however, do not persuade this Court that the Debtor knew that embezzled funds must be reported as income and that his failure to include such funds as income was fraudulent or a willful evasion of taxes. The Debtor credibly testified that he had no training in tax matters and that his duties as assistant branch manager did not include handling tax matters. The facts here are unlike those in *Levinson v. United States*, 969 F.2d 260 (7th Cir.1992) where the court concluded that the debtor had the requisite fraudulent intent under § 523(a)(1)(C) where the debtor was a practicing attorney and aware of his obligation to report embezzled funds as income. *Id.* at 265. The Debtor is not a professional charged with special knowledge of tax law. This is not a case where the Debtor acted with reckless indifference, *i.e.,* the Debtor knew or should have known that the embezzled funds should have been reported as income.

Further, since one of the Debtor's responsibilities as assistant branch manager was to act as the custodian of the vault, the Debtor was in a position to easily take funds and maintain two sets of books. It does not appear from the record before the Court, as argued by the IRS, that the embezzlement scheme was so sophisticated, or that the Debtor himself was so sophisticated, that the Debtor can be charged with the knowledge that embezzled funds should have been reported as income.

The Debtor testified that he always prepared his own tax returns. Until he filed the 1987 and 1988 tax returns, it appears that he properly calculated his taxes. A taxpayer who undertakes the preparation and filing of his own tax return assumes the duty of properly doing so. If the taxpayer fails to properly calculate his income taxes, the taxpayer is liable for the payment of the additional tax plus interest and/or penalty. However, it does not follow that any taxpayer who incorrectly states his income has the intent to defraud the government or to willfully evade or defeat a tax.

The IRS argues that the Debtor's involvement in criminal activity that would have been exposed by reporting embezzled funds on his tax returns evidences a purposeful intent to conceal the illegal income and therefore an intent to defraud the government and a willful attempt to evade a tax. The Debtor's 1987 tax return dated April 8, 1988 was prepared and filed during the course of the embezzlement scheme. If the Debtor knew that he had to report the embezzled funds on his 1987 tax return, the fact that he failed to report them could be circumstantial evidence that the Debtor intended to defraud the government or willfully evade taxes because the failure to report occurred during the embezzlement scheme. Indeed, the Debtor acknowledged that he did not want to get caught embezzling the funds and that reporting such funds on his tax return certainly would have increased his chances of being caught.

We do not believe, however, that the Debtor's failure to report the embezzled funds on his tax returns was a result of a purposeful intent to conceal the embezzled funds. We need not rely solely upon the Debtor's testimony that he did not know he had to report the embezzled funds in reaching this conclusion. The Debtor's 1988 tax return was dated February 7, 1989, after the Debtor was convicted of bank fraud and two days before he was to report to prison to begin serving his sentence on the bank fraud conviction. At the time he prepared the 1988 tax return, the Debtor had already been convicted and sentenced for the embezzlement scheme and clearly he had no reason to conceal the embezzled funds. Yet, the embezzled funds were not reported on the 1988 tax return either. The dates of the returns and the Debtor's actions and testimony convince this Court that the Debtor failed to report the embezzled funds not to conceal his criminal activity but simply because he did not know that they should have been reported.

We also do not believe that the Debtor's failure to keep or maintain records of the embezzled funds evidences fraud or a willful attempt to evade or defeat taxes. The Debt-

or timely filed his tax returns reporting all income he thought he had and kept records of such income. Since the Debtor did not know that the embezzled funds were reportable as income, it is logical that he did not keep records of such funds. It is also plausible that the Debtor did not keep records of the embezzled funds because he did not consider the funds to be his.

To summarize, we are not persuaded by the circumstantial evidence offered by the IRS that the Debtor made a fraudulent tax return or willfully attempted to evade or defeat a tax. The IRS failed to meet its burden of proving by a preponderance of the evidence that the Tax Debt is nondischargeable under § 523(a)(1)(C) and accordingly this Court will enter an Order discharging the Tax Debt.

### ORDER

**AND NOW,** this 6th day of January, 1994, upon consideration of the record made at the trial of Debtor's Complaint to Determine Dischargeability of Debt, it is **ORDERED** that the obligations of the Debtor to the Internal Revenue Service as set forth in the IRS' proof of claim are hereby **DISCHARGED.**