In re Thomas A. GRAHAM; Elizabeth M. Graham, Debtors.

Thomas A. GRAHAM; Elizabeth M. Graham

v.

INTERNAL REVENUE SERVICE; James J. O'Connell, Trustee,

United States of America, on behalf of its agency, Internal Revenue Service, Appellant.

No. 91–1980.

United States Court of Appeals, Third Circuit.

Argued May 19, 1992.

Decided Aug. 24, 1992.

Michael M. Baylson, U.S. Atty., Philadelphia, Pa., and Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, and Bridget M. Rowan (argued), U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellant.

Spencer Ervin, Jr. (argued) and Maria Frigoletto, Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., for Thomas Graham.

PRESENT: HUTCHINSON, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

The Internal Revenue Service (IRS) appeals a district court order affirming a bankruptcy court decision discharging Thomas and Elizabeth Graham (the Grahams) from liability for federal income taxes and a concomitant fraud penalty. IRS contends that an earlier final judgment of the United States Tax Court holding the Grahams liable for income tax deficiencies resulting from fraudulent tax returns, a circumstance which would preclude discharge, is controlling on the discharge issue. According to IRS, the Tax Court judgment requires reversal of the discharge order entered in the bankruptcy proceeding under either claim (*res judicata*) or issue preclusion (collateral estoppel). Alternately, IRS argues that this case must be remanded to the bankruptcy court for a new trial because that court incorrectly required IRS to establish its right to a fraud penalty by clear and convincing evidence, instead of by a mere preponderance. We will reject IRS's preclusion arguments, accept its argument on burden of proof and vacate the judgment of the district court and direct it to remand the case to the bankruptcy court for a new trial.

### I.

Thomas Graham was the President, majority stockholder and Chief Operating Officer of Meridian Engineering, Incorporated (Meridian) in 1971 when Meridian was implicated in a federal grand jury investigation concerning violations of federal law in connection with contracts between private companies and the City of Philadelphia. *See Graham v. Commissioner,* 770 F.2d 381, 382–83 (3d Cir.1985). In 1974, Graham testified before the grand jury under a grant of immunity. *Id.* at 383. In connection with this testimony, Graham's bank account records for 1969 through 1973 and other personal records were subpoenaed by the government. *Id.* With the district court's permission, IRS agents were allowed to use information gleaned from the subpoenaed materials for civil matters. *See id.* at 382–83.

On February 20, 1980, IRS sent the Grahams a notice of income tax deficiencies for the years 1969 through 1972. *Id.* at 383.

IRS determined that during those years, Meridian paid a substantial amount of Thomas Graham's expenses that should have been, but were not, reported as dividends from the corporation. *Id.* IRS added fraud penalties and interest pursuant to 26 U.S.C.A. § 6653(b) (West 1989)[1] to the resulting tax deficiency.

The Grahams challenged the deficiency in the Tax Court, arguing that IRS improperly used documents from the grand jury proceedings. *Id.* The parties entered into a stipulation there which read, in part:

> Petitioners Thomas A. Graham and Elizabeth Graham agree that if it is finally determined that the notice of deficiency issued to them for the years in issue is not invalid[,] *the deficiencies in income tax and additions to tax determined therein, although not admitted, are uncontested so that decision may be entered in accordance with respondent's determinations* contained in the statutory notice of deficiency ... without the necessity for the introduction of any evidence by petitioners or respondent.

*Graham v. Commissioner*, 82 T.C. 299, 305 (1984) (emphasis added).[2] The Tax Court determined that even if the documents in question were improperly obtained, the statutory notice of deficiency was still valid and, in accordance with the stipulation, entered judgment in favor of the Commissioner for the taxes and the fraud penalties. *Id.* at 310–11. We affirmed. *Graham*, 770 F.2d at 386.

## II.

On June 23, 1987, the Grahams petitioned for relief under Chapter 11 of the Bankruptcy Code, *see* 11 U.S.C.A. §§ 1101–74 (West 1979 & Supp.1992). IRS filed a claim for unpaid income taxes and fraud penalties it said the Grahams owed for the years 1969 through 1975, 1984 and 1985.

According to IRS, the Grahams owed it a total of $711,801.52. The Grahams contested IRS's claim by filing an adversary proceeding in the bankruptcy court in which they sought a discharge from liability for the amount claimed by IRS.

IRS moved for partial summary judgment, asserting that the Grahams' discharge request was barred under principles of claim and issue preclusion because of the prior Tax Court judgment against them. Because the Tax Court judgment included fraud penalties, IRS contended that both the taxes and penalties claimed from the Grahams automatically fell under 11 U.S.C.A. § 523(a)(1)(C) (West 1979 & Supp.1992) which excepts from discharge in bankruptcy taxes owed and penalties accrued as a result of a fraudulently filed tax return. The United States Bankruptcy Court for the Eastern District of Pennsylvania denied IRS's motion, *see In re Graham*, 94 B.R. 386, 391 (Bankr.E.D.Pa.1988), and the case proceeded to trial.[3] On December 14, 1989, after a hearing on the dischargeability issue, the bankruptcy court entered an order holding that the taxes were dischargeable. *See In re Graham*, 108 B.R. 498, 505 (Bankr.E.D.Pa. 1989). In so deciding the bankruptcy court held that claim preclusion did not apply in bankruptcy proceedings for discharge, *id.* at 501, and that issue preclusion did not apply because the issue of fraud was not actually litigated in the Tax Court, *id.* at 500. Finally, the bankruptcy court held that IRS had the burden of proving by clear and convincing evidence that the Grahams had fraudulently underreported their income and had failed to meet that burden. *Id.* at 501, 505.

IRS filed a timely appeal from the bankruptcy court's decision. After initial briefing before the United States District Court for the Eastern District of Pennsylvania, IRS filed a supplemental brief in which it

---

1. This provision has since been repealed and replaced by 26 U.S.C.A. § 6663 (West Supp. 1992). *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(a), 1989 U.S.C.C.A.N. (103 Stat.) 2106, 2397.

2. The full stipulation is not part of the record in this case.

3. Before trial, IRS conceded that some of the taxes claimed were dischargeable. After this concession the only tax liabilities in dispute at trial were the tax liabilities and fraud penalties of Thomas Graham for the years 1969 through 1972.

argued that it was not required to prove fraud in the bankruptcy court by clear and convincing evidence under the holding of the Supreme Court of the United States in *Grogan v. Garner,* — U.S. —, —, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), an intervening decision decided January 15, 1991. There the Supreme Court held that the preponderance standard applies to all exceptions to discharge under 11 U.S.C.A. § 523(a). *Id.; see In re Graham,* 131 B.R. 275, 281 (E.D.Pa.1991). On August 23, 1991, the district court issued an order affirming the bankruptcy court. In the accompanying opinion it agreed with the bankruptcy court that neither claim nor issue preclusion applies to discharge proceedings and also held that *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), precluded *Grogan's* retroactive application. *Graham,* 131 B.R. at 278–83.

Under Federal Rule of Appellate Procedure 4(a)(1), IRS would normally have had sixty days to file its notice of appeal, a period that would have run on October 22, 1991. Here, however, the IRS did not receive notice of the district court's decision until October 4, 1991 and requested an extension of time within which to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5). Having received no objection from the Grahams, the district court granted IRS an extension until November 21, 1991 to file its notice of appeal. IRS filed its notice of appeal on the last day of the extension.

### III.

We have appellate jurisdiction over the final decision of the district court under 28 U.S.C.A. § 158(d) (West Supp.1992). The district court had jurisdiction to hear the appeal from the bankruptcy court by virtue of 28 U.S.C.A. § 158(a) (West Supp.1992). The bankruptcy court had subject-matter jurisdiction over the Grahams' adversary proceeding. *See* 28 U.S.C.A. § 157(b) (West Supp.1992).

■ Our review of the two preclusion issues is plenary. *See Rider v. Pennsylvania,* 850 F.2d 982, 988–95 (3d Cir.), *cert.* *denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). Our review of the retroactivity question is also plenary. *See James B. Beam Distilling Co. v. Georgia,* — U.S. —, —, — – —, 111 S.Ct. 2439, 2443, 2446–47, 115 L.Ed.2d 481 (1991).

### IV.

Since the resolution of either of the preclusion issues in IRS's favor would require a reversal, we address them first.

### A.

■ Both the bankruptcy court, *see In re Graham,* 108 B.R. at 501, and the district court, *see In re Graham,* 131 B.R. at 278–79 & n. 5, held that claim preclusion (*res judicata*) did not apply in dischargeability proceedings in bankruptcy. Both courts cited to *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) without discussion. Claim preclusion applies to claims that "were or could have been raised" in a prior action involving the "parties or their privies" when the prior action had been resolved by "a final judgment on the merits." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Claim preclusion thus bars relitigation of any claim that could have been raised in the prior action even if it was not so raised.

■ The key dispute between IRS and the Grahams over claim preclusion is whether *Felsen* applies and if it does, whether it completely eliminates claim preclusion as a defense to the Grahams' adversary proceeding in this case. In *Felsen,* Brown guaranteed a bank loan that was used to finance Felsen's business. On default, the bank sought to collect the loan balance from Brown, Felsen and Felsen's business in a state-court action. Brown filed an answer and a cross-claim, alleging in both that Felsen induced him to sign the guaranty through a pattern of misrepresentation and non-disclosure. The bank's action was settled by a stipulation which provided that the bank should recover jointly and severally from all of the defendants

and that Brown should have judgment against Felsen for any amounts Brown had to pay. The legal theory on which Felsen's liability to Brown was premised was not indicated in either the stipulation or the judgment entered on it. *Id.* 442 U.S. at 128, 99 S.Ct. at 2207.

Felsen then filed for bankruptcy under the Bankruptcy Act [4] and Brown sought to establish that his claim against Felsen for the debt was nondischargeable because it arose out of a pattern of fraud perpetrated by Felsen. *Id.* at 128–29, 99 S.Ct. at 2207–08. The bankruptcy court held that the judgment in the earlier state proceeding precluded Brown from asserting fraud as a bar to discharge of his claim against Felsen because neither the stipulation or Brown's judgment on the cross-claim stated that Felsen's liability was based on fraud. *Id.* at 129–30, 99 S.Ct. at 2208. The bankruptcy court thus precluded Brown from producing extrinsic evidence of Felsen's fraud. Among the evidence excluded was Felsen's own deposition which supported Brown's contention that Felsen had fraudulently induced Brown to sign the guaranty. *See id.* at 130, 99 S.Ct. at 2208. Both the United States District Court for the District of Colorado and the United States Court of Appeals for the Tenth Circuit affirmed. *Id.* at 130–31, 99 S.Ct. at 2208–09.

The Supreme Court granted certiorari and reversed. *Id.* at 131, 139, 99 S.Ct. at 2209, 2213. The Supreme Court rejected Felsen's argument that Brown's claim was barred in the bankruptcy proceedings because fraud could have been litigated or included in the stipulation in the state-court proceeding but was not. It reasoned that "careful inquiry reveals that neither the interests served by [claim preclusion], the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing [Brown] from submitting additional evidence to prove his case." *Id.* at 132, 99 S.Ct. at 2210.

The Court first observed that the "policy of repose" that undergirds claim preclusion was not present because Felsen, not Brown, erected the barrier of bankruptcy. *Id.* at 131–32, 99 S.Ct. at 2209. In other words, Felsen's action of seeking protection in bankruptcy upset the interest that Brown and society had in treating the prior state-court judgment as an end to his dispute with Felsen. The Court reasoned that Felsen had no right to turn the doctrine of claim preclusion against Brown. *Id.* at 132–34, 99 S.Ct. at 2209–11.

The Court also decided that application of claim preclusion for Felsen's benefit in bankruptcy would upset the relationship between federal bankruptcy law and state court proceedings. Thus, the Court said when issues arise in a state proceeding implicating the provision of federal bankruptcy laws that preclude discharge of claims based on fraud, "the state-law concept is likely to differ from that adopted in the federal statute." *Id.* at 135, 99 S.Ct. at 2211. Additionally, the parties would have little incentive to litigate the issues in the state proceeding that are not identical to those arising under the federal bankruptcy laws. *Id.* at 135, 99 S.Ct. at 2211. Allowing state courts to decide questions Congress wanted to commit to bankruptcy courts would disturb the federal bankruptcy scheme. *Id.* at 135–37, 99 S.Ct. at 2211–12.

Finally, the Court noted that the fraud question was now for the first time squarely at issue. *Id.* at 138, 99 S.Ct. at 2212. To hold that claim preclusion compelled discharge of a debt for monies that the debtor extracted from his creditor by fraud because a stipulation in favor of the creditor failed to specifically mention fraud would deprive "a conscientious creditor [who] has previously reduced his claim to judgment [of] further inquiry into the true nature of the debt." *Id.* at 138, 99 S.Ct. at 2212. Thus, even though fraud could have been raised, the Court excused the fact that it was not because there was no reason to raise the fraud question in the prior state

---

**4.** In *Felsen,* the Court noted that the Bankruptcy Act's discharge provisions concerning fraud were "substantially similar" to those under the new Bankruptcy Code. *Id.* at 129 n. 1, 99 S.Ct. at 2208 n. 1.

proceedings and held that claim preclusion did not apply.

IRS contends that *Felsen* has no application here. It points out the Grahams' case is the converse of the *Felsen* situation. In *Felsen,* the debtor sought to set up claim preclusion to avoid a previous judgment. In the Grahams' case, a creditor (IRS) seeks instead to interpose claim preclusion as a bar to prevent a debtor's (the Grahams') avoidance of a previous judgment. Thus, argues IRS, its invocation of claim preclusion vindicates the policy in favor of not relitigating prior final judgments. The IRS also argues that the Grahams, who initiated the prior Tax Court proceeding, could have litigated the issue of fraud there but did not. Finally, IRS contends that it should not be deprived of claim preclusion as a defense to the Grahams' adversary proceeding seeking discharge of their obligation to pay taxes they had fraudulently avoided because the Bankruptcy Code clearly prohibits discharge of debts that are based on fraud. The Grahams simply say *Felsen* stands for the proposition that claim preclusion is not available in bankruptcy discharge proceedings, period. No ifs, ands or buts. All factual distinctions are meaningless according to the Grahams.

We have been unable to find any authority that distinguishes *Felsen* for the reasons asserted by the IRS.[5] Nor has the IRS cited such a case to us. Thus, we examine the reasoning behind *Felsen* to see if it is proper to apply it in our case.

Both parties can draw support from the reasons underlying *Felsen.* For example, the Supreme Court's rejection of claim preclusion in *Felsen* was based in part on its determination that application of claim preclusion to dischargeability proceedings in bankruptcy would upset the repose of the prior state judgment. Here, applying claim

preclusion would not upset the repose enjoyed by IRS in the prior Tax Court judgment, indicating that claim preclusion should apply.

On the other hand, IRS does not offer a persuasive argument to counter the Supreme Court's second reason for its decision in *Felsen,* namely Congress' intention of reserving dischargeability questions exclusively for the bankruptcy court. Section 523(a)(1)(C) reads:

> (a) A discharge under section 727, 1141,, [sic] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or customs duty—
>
> . . . .
>
> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C.A. § 523(a)(1)(C). Application of claim preclusion to this dispute would take the issue of non-dischargeability for tax debts tainted with fraud out of the hands of the bankruptcy court, in contradiction of the Supreme Court's conclusion that Congress intended to leave discharge questions in the exclusive jurisdiction of the bankruptcy courts. *See Felsen,* 442 U.S. at 136–37, 99 S.Ct. at 2211–12. The Grahams institution of the prior proceeding in the Tax Court is immaterial on this point. We recognize that *Felsen* involved a conflict between the finality of a state-court judgment and the bankruptcy court's exclusive jurisdiction over discharge proceedings, whereas the conflict here is between the federal tax court and the bankruptcy court, but this distinction does not alter the fact that IRS would deprive the bankruptcy court of the power to determine the instant dischargeability question. *Cf. Grogan,* —— U.S. at —— n. 10, 111 S.Ct. at 658 n. 10

---

5. The recent decision in *Levinson v. United States,* 969 F.2d 260 (7th Cir.1992) involves a factual scenario nearly identical to that at issue in *Felsen.* There, too, a debtor sought to invoke *res judicata* against a creditor who had received a judgment through stipulation and consent order in a prior tax court proceeding. The Seventh Circuit faithfully applied the *Felsen* rationale, and rejected the application of *res judicata* to subsequent bankruptcy court proceedings. For the reasons discussed below, the *Felsen* rationale is equally controlling here, despite the factual distinctions between the present case, where the IRS as a creditor seeks to impose *res judicata,* and *Felsen* and *Levinson,* in which the debtor sought to do so. Thus, despite the variation in facts, our opinion is entirely consistent in principle with both *Felsen* and *Levinson.*

("The 1970 amendments [to the Bankruptcy Act] took jurisdiction over certain dischargeability exceptions, including the exception for fraud, away from the state courts and vested jurisdiction *exclusively* in the *bankruptcy* courts." (emphasis added)).

IRS attempts to avoid this problem by narrowly defining the claim subject to preclusion as fraud, not discharge, though it recognizes that the fraud question does happen to control the discharge issue. We think that the logic of *Felsen* precludes so narrow a definition. Indeed, IRS's definition defines the problem away. It swallows up the bankruptcy court's exclusive jurisdiction over the discharge of federal tax claims in one great gulp. Thus, Felsen originally argued that claim preclusion applied because the fraud question could have been litigated in the prior proceeding. *Felsen*, 442 U.S. at 129, 99 S.Ct. at 2208. The Court flatly rejected this argument and defined the claim at issue as the debtor's right to discharge. In the part of its decision that dealt with Congress's intention to leave dischargeability questions exclusively to the bankruptcy courts, the Supreme Court focused on the debtor's claim to discharge, not the creditor's claim that fraud barred discharge. *Id.* at 134–38, 99 S.Ct. at 2211–12. As a matter of fact, in the Supreme Court, even Felsen agreed that the relevant claim was dischargeability when he maintained "that the state-court collection suit is the appropriate forum for resolving all debtor-creditor disputes, including those concerning dischargeability." *Id.* at 134, 99 S.Ct. at 2211.[6]

We believe this logic is controlling. When a debtor seeks discharge in bankruptcy his claim to that remedy is the claim at issue and fraud by the debtor is one of several potential defenses or objections to the bankruptcy court's grant of relief to the debtor. The claim is the debtor's right to discharge, not the creditor's objection, based on fraud, to discharge.

Even if we were to put *Felsen* aside, and accepting the IRS's definition of the claim as fraud for the sake of argument, *Grogan* would still stand in the IRS's way. In *Grogan*, the Supreme Court unanimously noted that certain exceptions to dischargeability, including fraud, are questions for the bankruptcy courts in the first instance:

> The 1970 amendments [to the Bankruptcy Act] took jurisdiction over certain dischargeability exceptions, including the exception for fraud, away from the state courts and vested jurisdiction *exclusively* in the bankruptcy courts.

*Grogan,* —— U.S. at —— n. 10, 111 S.Ct. at 658 n. 10 (emphasis added). This arrangement continues under the current Bankruptcy Code. *Id.* —— U.S. at ——, 111 S.Ct. at 658. The IRS's focus on fraud as the claim involved is unavailing.

Additionally, as in *Felsen,* the fraud question first became squarely at issue only in the bankruptcy proceedings. *See Felsen,* 442 U.S. at 138, 99 S.Ct. at 2212. The Tax Court proceedings focused exclusively on the validity of the deficiency. *See Graham,* 82 T.C. at 310–11. This factor also counsels against applying claim preclusion to this discharge proceeding.

We recognize that the facts of this case seem to make the application of the *Felsen* rule somewhat inequitable. Denial of repose to all the issues encompassed in the Tax Court judgment is not easy to put aside. In this case, however, we think that Congress's intent to leave dischargeability questions for the bankruptcy courts rather than state or other federal courts, along with the fact that the fraud question was not realistically a question presented in the Tax Court, overbears the strong policy in favor of repose as to issues that could have been litigated in a case in which judgment is now final. As the Supreme Court did in *Felsen,* we must leave it for the bankruptcy court to decide the dischargeability question in the first place, using whatever evidence it deems relevant and proper as proffered by each party.

6. Even if we were to agree with the IRS on the *Felsen* question, we would still hold that claim preclusion does not apply because the dischargeability question could not have been raised in the Tax Court proceeding.

### B.

Both the bankruptcy court, *see In re Graham*, 108 B.R. at 501, and the district court, *see In re Graham*, 131 B.R. at 280, held that issue preclusion (collateral estoppel) also did not apply because the issue of fraud was not actually litigated in the Tax Court. It is settled law that issue preclusion does apply to bankruptcy proceedings. *See Grogan*, —— U.S. at —— n. 11, 111 S.Ct. at 658 n. 11. Issue preclusion applies when

(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment....

*In re Braen*, 900 F.2d 621, 628–29 n. 5 (3d Cir.1990) (quoting *In re Ross*, 602 F.2d 604, 608 (3d Cir.1979) (quoting *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976))), *cert. denied*, —— U.S. ——, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991). Of these four elements, the parties contest only the presence of the second: whether the issue of fraud was actually litigated in the Tax Court proceeding. Thus, this is the only element we address.

IRS recognizes that issue preclusion does not always apply when a judgment is reached by stipulation but contends that it applies in this case because the Tax Court made factual findings in connection with the judgment and that issue preclusion may be based on these findings. IRS notes that the Tax Court stated that "the stipulated facts are so found," *Graham*, 82 T.C. at 300, in its view, the stipulated facts set forth by the Tax Court establish fraud. The Grahams also stipulated that the fraud "additions to [the] tax determined ... although not admitted, are uncontested." *Id.* at 305. Thus, even though the fact of fraud was not admitted, IRS contends that

issue preclusion applies because the stipulated facts logically support the addition of fraud penalties.[7]

The Grahams reply that the stipulation does not expressly mention fraud. They also argue it does not recite facts that are sufficient to constitute the elements of fraud as a matter of law and specifically negates any admission that fraud is present. Thus, they contend the issue of fraud is not precluded by the stipulation in the Tax Court.

■ When the factual findings necessary to a judgment are incorporated into a consent decree, they satisfy the actually litigated element of issue preclusion and are given preclusive effect. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987); *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987); *In re Allman*, 735 F.2d 863, 864–65 (5th Cir.1984). We give preclusive effect to issues parties agree to decide by consent decree. *See Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96–97 (3d Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). In such cases, however, the intent of the parties concerning the preclusive effect of agreed facts or claims is also relevant. *See, e.g., Halpern*, 810 F.2d at 1064. The reasoning of these cases applies with equal force when a stipulation, rather than a consent decree, is involved.

■ The relevant portion of the parties' stipulation that is included in the record presently before us states:

Petitioners Thomas A. Graham and Elizabeth Graham agree that if it is finally determined that the notice of deficiency issued to them for the years in issue is not invalid[,] *the deficiencies in income*

---

7. We are at somewhat of a loss in determining precisely what "stipulated" facts the IRS refers to. As stated, *supra* note 2, the entire Tax Court stipulation was not made part of the record in the bankruptcy court. We are thus unable to consider any facts that may have been explicitly set forth in those parts of the Tax Court stipula-

tion that were never presented to the bankruptcy court. Accordingly, we can only assume that IRS refers to those facts that are implicit in the portions of the Tax Court stipulation that are in this record, especially that portion quoted in this opinion. *See* Typescript *infra* at 1098.

*tax and additions to tax determined therein, although not admitted, are uncontested so that decision may be entered in accordance with respondent's determinations* contained in the statutory notice of deficiency ... without the necessity for the introduction of any evidence by petitioners or respondent.

*supra* at 1093 (quoting *Graham,* 82 T.C. at 305 n. 4 (citation omitted) (emphasis added)). While the Tax Court opinion states that the facts alleged in the stipulation "are so found," *Graham,* 82 T.C. at 300, no facts pertaining to fraud or its elements are mentioned in the portion of the stipulation included in the record before us. Rather, the stipulation only refers to uncontested income taxes and additions. *Id.* at 305. Though the stipulation itself establishes the validity of the deficiencies, neither they nor the existence of the underlying fraud are "admitted."

Moreover, the Tax Court's opinion does not set forth any facts concerning the alleged fraud. The sole issue before the Tax Court was the propriety of using the seized documents, and not the issue of fraud. Accordingly, it stated only:

> The information upon which [the IRS] determined the deficiencies and fraud additions was based on or gleaned from documents, testimony, and other information secured by agents of the [IRS] from the[] grand jury proceedings.

*Id.*

This statement does not constitute a finding of fact pertaining to fraud. Accordingly, even though the penalty imposed by the Tax Court was based on the fraud penalty 26 U.S.C.A. § 6653(b) authorizes in cases where fraud is established, the issue of

fraud was never litigated or admitted, nor was a specific factual finding concerning it made. The fact that the penalty was based on a fraud provision goes to the fourth element of issue preclusion, whether the issue was essential to the prior judgment, and is not material to the separate requirement that a fact or issue be actually litigated if issue preclusion is to apply. Here the fraud issue was "uncontested" but not admitted in the words of the stipulation. In the absence of any other evidence in the record before us as to the intent of the parties on this point, we hold that the issue of fraud was not actually litigated in the Tax Court proceeding and therefore issue preclusion does not apply.

## V.

The final issue, involving the retroactivity of *Grogan,* was considered only by the district court since *Grogan* did not come down until after the bankruptcy court's final order in the adversary proceeding had been appealed to the district court. *Grogan* held that the burden of proof to be satisfied by a creditor objecting to a debtor's discharge under the exceptions to dischargeability set out in 11 U.S.C.A. § 523 is a preponderance-of-the-evidence standard, rather than clear-and-convincing-evidence standard. *Grogan,* —— U.S. at ——, 111 S.Ct. at 661. Assuming that the retroactivity issue was properly raised for the first time on appeal, the district court looked to the test set forth in *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355, concerning retroactive application of judge-made law and concluded that *Grogan* should not be applied retroactively. *In re Graham,* 131 B.R. at 281–83.[8] Preliminarily, the district

---

**8.** *Chevron Oil* established a three-part analysis for determining retroactivity:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g., Hanover Shoe v. United Shoe Machinery Corp.,* [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see,

*e.g., Allen v. State Board of Elections,* [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969)]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker,* [381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable

court held that *Grogan* dealt with a procedural rule and that procedural rules are not ordinarily given retroactive effect. *Id.* at 281. It then went on to perform a *Chevron Oil* analysis, and decided that *Grogan* established a new rule of law, a factor weighing against retroactive application. *Id.* at 282. The district court also held that retroactive application of *Grogan* would require a new trial and thus fail to serve *Grogan*'s goal of minimizing litigation and retroactive application. *Id.* at 283. Finally, the district court held that it would be inequitable to make the Grahams litigate the dischargeability issue again and therefore the remaining *Chevron Oil* factor, inequity, added to the balance against retroactivity. *Id.*

In using a *Chevron Oil* analysis for deciding the issue of *Grogan*'s retroactivity, the district court did not have the benefit of the Supreme Court's later teaching on the subject in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *James B. Beam* was also handed down while the district court's decision was pending, but was not noted by the district court or the parties. This decision introduces still another complicating factor to the always difficult issues surrounding the conflict of laws in time. Before we consider the implications of *James B. Beam* for this case it is necessary to deal with the preliminary matter of waiver.

 The Grahams argue that IRS should not be allowed to raise the preponderance-of-the-evidence standard on appeal because they did not raise it in the bankruptcy court. In making this waiver argument they rely upon language in Justice Souter's lead opinion in *James B. Beam*, which states that new departures in judge-made law should not be applied retroactively when their application is "barred by procedural requirements or [claim preclusion]." *Id.* —— U.S. at ——, 111 S.Ct. at 2448 (opinion of Souter, J., announcing the judgment of the Court). The Grahams also

results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

claim that they would be unfairly prejudiced by application of the *Grogan* standard now because (1) they might have put more evidence on had they known IRS's burden of proof did not rise above the minimum standard of preponderance and (2) the bankruptcy court might have found for them on the fraud issue even if the preponderance standard applied.

IRS maintains that it raised the issue in a timely manner because, as *Grogan* notes, most of the United States Courts of Appeals had adopted the clear-and-convincing-evidence standard before the Supreme Court rendered its decision in *Grogan*. *See Grogan*, —— U.S. at —— & nn. 7 & 8, 111 S.Ct. at 657 & nn. 7 & 8. While this Court may have correctly forecast the *Grogan* result in *In re Braen*, 900 F.2d at 624, the *Braen* case only concerned objections to discharge of debts arising from willful and malicious injury under 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp.1992). Indeed, we specifically noted in *Braen* that the decisions dealing with exceptions to discharge of debts arising from a loss due to fraud under section 11 U.S.C.A. § 523(a)(2)(A) (West Supp.1992) (exception to discharge for debt due to money, property services or credit procured by fraud or false misrepresentations), required the objector claiming fraud to prove it by clear-and-convincing evidence. *Id.* at 625 & n. 2. IRS also points to *dicta* in *Braen* where we said that "the appropriate burden of proof under § 523 is the prevailing standard used by courts to resolve the types of claims underlying the particular exception at issue." *Id.* at 625–26. We recognized that common law actions for fraud, the claim underlying the 11 U.S.C.A. § 523(a)(2) exception for indebtedness arising from fraud, "have historically employed the heavier clear and convincing burden of proof." *Id.* at 625. Thus, IRS argues, it had no basis in law for advocating use of the preponderance of the evidence standard in proving tax fraud under 11 U.S.C.A. § 523(a)(1)(C) until the Supreme Court decided *Grogan*.

*Cipriano v. City of Houma*, [395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969)].
*Chevron Oil*, 404 U.S. at 106–07, 92 S.Ct. at 355.

We agree with IRS and hold that it raised the applicability of *Grogan* in a timely manner. To require it to raise the burden of proof issue in the context of fraud any earlier would come close to requiring clairvoyance. In this respect the precise timing of the procedural events in this case is crucial. Accordingly, we recount them here.

The bankruptcy court hearing took place on July 17, 1989. The government conceded that the clear-and-convincing standard applied to cases such as this one under section 523(a)(1)(C), the exception to discharge for a debt arising from a fraudulently filed tax return. As of July 17, 1989, every United States Court of Appeals that had considered the applicable burden of proof in cases involving a fraud exception to discharge had agreed that the clear-and-convincing-evidence standard applied. *See In re Dougherty,* 84 B.R. 653 (Bankr. 9th Cir.1988) (section 523(a)(2)(A)); *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987) (same); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986) (same); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986) (same); *In re Kimzey,* 761 F.2d 421, 423–24 (7th Cir. 1985) (same). The leading commentator on bankruptcy law then shared this view. *See* 3 L. King, *Collier on Bankruptcy* ¶ 523.-08[5] (15th ed. 1985), *cited in Black,* 787 F.2d at 505. At this time, the only split in authority concerned the burden of proof for exception to discharge for a debt due to malicious or willful injury to person or property under 11 U.S.C.A. § 523(a)(6). *Compare Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1264 (11th Cir.1988) (clear and convincing) *with Combs v. Richardson,* 838 F.2d 112, 115–16 (4th Cir.1988) (preponderance).

Use of the clear-and-convincing standard was also logical because at common law that standard had always been applied to fraud cases. *See Grogan,* —— U.S. at —— & n. 15, 111 S.Ct. at 660 & n. 15; *Braen,* 900 F.2d at 625. Although the cases and the commentary just cited all concerned

section 523(a)(2)(A) relating to fraud generally and our case concerns section 523(a)(1)(C), relating to tax fraud specifically, it is proof of fraud that underlies each exception, and old section 6653(b) of the Internal Revenue Code concerning tax fraud expressly requires the government to prove such fraud by the clear-and-convincing standard before the fraud penalty could apply. *See Henson v. Commissioner,* 887 F.2d 1520, 1525–26 (11th Cir.1989). Thus, while the question was undecided in this Court at the time of the bankruptcy court hearing in this case, the courts of appeals that had met the question were united and had both commentary and history on their side in holding that the clear-and-convincing standard applied to exceptions to discharge in bankruptcy based on fraud.[9]

The bankruptcy court entered its decision in the Grahams' favor on December 14, 1989. After filing its appeal with the district court, IRS submitted its opening brief to the district court on March 8, 1990. On March 30, 1990, this Court decided *Braen.* *See Braen,* 900 F.2d at 621. In *Braen* we sided with the Fourth Circuit and disagreed with the Eleventh Circuit in holding that the preponderance standard applied to exceptions to discharge for debts arising from injury or damage caused by willful and malicious conduct. *Id.* at 624. In *dicta,* we noted that all save one of the cases that held an objecting creditor to a clear-and-convincing standard involved an exception to discharge based on fraud. *Id.* at 625 & n. 2. We said, albeit in *dicta,* that we too would apply the clear-and-convincing standard to any exception which required proof of fraud:

As we have noted, in contrast to actions for malicious prosecution, common law actions for fraud have historically employed the heavier clear and convincing evidence burden of proof.... [O]ur view [is] that the appropriate burden of proof under § 523 is the prevailing stan-

---

**9.** The United States Court of Appeals for the Eighth Circuit renewed its stand twenty-three days after the bankruptcy court hearing in this case. *See In re Garner,* 881 F.2d 579, 581–82 (8th Cir.1989) (applying clear-and-convincing standard in section 523(a)(2)(A) case), *rev'd, Grogan,* —— U.S. at ——, 111 S.Ct. at 654.

dard to resolve the types of claims underlying the particular exception at issue. *Id.* at 625–26. Thus, our decision in *Braen* only served to confirm IRS's reasonable position in the bankruptcy court that the clear-and-convincing standard applied to section 523(a)(1)(C) exceptions to discharge.

The Grahams filed their brief in the district court on April 20, 1990. IRS filed its reply brief on May 3, 1990. The case was then ready for disposition. Not until January 15, 1991 did the Supreme Court decide *Grogan* and hold the appropriate standard for an objector's burden of persuasion in section 523(a) cases is the preponderance-of-the-evidence standard instead of the clear-and-convincing standard. *See Grogan,* — U.S. at —, —, 111 S.Ct. at 645, 661. Just sixteen days later, with its appeal still pending in the district court, IRS moved for permission to file a supplemental brief regarding the effect of *Grogan.* The district court granted the motion and IRS then briefed the *Grogan* issue. In its opinion, the district court did not rely on waiver, assumed that the *Grogan* issue had been preserved and held on the merits that *Chevron Oil* precluded *Grogan*'s retroactive application. *See In re Graham,* 131 B.R. at 280–83.

With this background, we hold IRS took timely action to preserve the burden of proof issue. We note that this is not simply a case in which the Supreme Court rejected the decisions of all of the courts of appeals that had previously decided the question of an objector's burden of proof in cases involving a fraud exception to discharge in bankruptcy, but rather one in which it perceived the material question on the burden of proof issue in a different light than the courts of appeals. The Supreme Court saw the question as what was the standard for *all* types of exceptions to discharge under section 523(a), subsumed in which is the premise that the standard is uniform, *see Grogan,* — U.S. at — — —, 111 S.Ct. at 659–60, while each of the courts of appeals approached the issue on an exception-by-exception basis. IRS has preserved the issue of *Grogan*'s applicability and we will therefore discuss that issue on its merits.

The Grahams first contend that "*Grogan* concerned the exception to discharge contained in 523(a)(2) relating to private fraudulent claims so its application to discharges under § 523(a)(1)(C) is open to doubt." Brief for Appellee at 15. They also say that the application of differing burdens of proof in the Tax Court as opposed to the bankruptcy courts will inure solely to the benefit of the IRS and the detriment of the taxpayer. If the fraud issue is "actually litigated" in the Tax Court and the IRS wins under the higher standard of proof, it gains the benefit of issue preclusion in the bankruptcy forum. If the IRS loses and the taxpayer wins, the taxpayer cannot use the Tax Court judgment in bankruptcy because the IRS might succeed under a lower burden of proof.

We think IRS correctly points out that the Grahams' interpretation of *Grogan* is unduly narrow. While the specific factual circumstances of *Grogan* involved a claim of nondischargeability under section 523(a)(2)(A), as opposed to our case which concerns section 523(a)(1)(C), the text of the opinion consistently refers to section 523(a) in general. *See Grogan,* — U.S. at —, 111 S.Ct. at 656; *id.* — U.S. at —, 111 S.Ct. at 660 ("Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions."); *id.* — U.S. at —, 111 S.Ct. at 661 ("For these reasons, we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C.A. § 523(a) is the ordinary preponderance-of-the-evidence standard."). The Court also made this point expressly:

Our conviction that Congress intended the preponderance standard to apply to the discharge exceptions is reinforced by the structure of § 523(a), which groups together in the same subsection a variety of exceptions without any indication that any particular exception is subject to a special standard of proof.... [I]t is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions.

*Grogan,* —— U.S. at ——–——, 111 S.Ct. at 659–60 (footnote omitted). Indeed, as we have already stated, the rationale of Grogan is uniformity with respect to a creditor's burden of persuasion on objections to discharge in bankruptcy. The Grahams' efforts to distinguish *Grogan* are unavailing. It is controlling if it is to be applied retroactively.

Thus, at last we return to *James B. Beam* and retroactivity. The *James B. Beam* majority was comprised of four opinions. We do not lightly dismiss the oral argument made by counsel for the Grahams that the Supreme Court is still wrestling with the retroactivity question. Still, we think it is possible to glean a general rule from the various opinions in *James B. Beam.* From *James B. Beam* it is at once plain that a Supreme Court decision applied to the parties before the Court applies to all other cases currently pending at any level.

Justice Souter, joined by Justice Stevens, wrote the opinion announcing the judgment of the Court in *James B. Beam.* It considered whether the Supreme Court's opinion in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (state statute that discriminates between imported and locally distilled spirits by assessing disparate excise tax violated Commerce Clause) applied retroactively "to claims arising on facts antedating that decision." *James B. Beam,* —— U.S. at ——, 111 S.Ct. at 2441. In discussing the issue, Justice Souter noted that cases may be applied retroactively, prospectively or selectively prospectively. *Id.* —— U.S. at ——– ——, 111 S.Ct. at 2443–44. The rule announced in *Bacchus* was applied to the parties in that case, so pure prospectivity was not an option. *Id.* —— U.S. at ——, 111 S.Ct. at 2445. Justice Souter then extended the criminal law rule of *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) into the civil arena and eliminated the possibility of selective prospectivity under federal law. *Id.* —— U.S. at ——–——, 111 S.Ct. at 2446– 48. Thus, after *James B. Beam,* Justices Souter and Stevens are of the opinion that the only options are retroactivity and pros-

pectivity, although Justice Souter pointed out that they did not speculate about the propriety of pure prospectivity. *Id.* —— U.S. at ——, 111 S.Ct. at 2448.

Justice White concurred, endorsing "the narrow[ ] ground employed by Justice Souter." *Id.* —— U.S. at ——, 111 S.Ct. at 2449 (White, J., concurring). He then went on to express his view on the propriety of pure prospectivity, noting that it is often practiced in connection with cases that announce new interpretation of the Constitution or a statute. *Id.*

Justice Scalia, joined by Justices Marshall and Blackmun, concurred based on the rationale of *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) that it is the power of courts "to say what the law is," *id.* at 177, not to change the law. *James B. Beam,* —— U.S. at ——, 111 S.Ct. at 2451 (Scalia, J., concurring). Justice Scalia concluded that selective prospectivity and pure prospectivity were beyond the Court's power. *Id.* Justice Blackmun's opinion, joined by Justices Marshall and Scalia, merely took issue with several points Justice O'Connor advanced in her dissent that are immaterial to this case. *Id.* —— U.S. at ——–——, 111 S.Ct. at 2449–50 (Blackmun, J. concurring).

The one common thread among the positions of these six Justices is that all agree if a rule is applied in the case currently before the Court, it must be applied to all other pending cases. There can be no question that the rule in *Grogan* was applied to the parties before the Court because the Court reversed the judgment of the court of appeals. *See Grogan,* —— U.S. at ——, 111 S.Ct. at 661. Thus, in *James B. Beam* six Justices teach us that we must apply *Grogan* to the case now before us (the question of *James B. Beam's* own retroactivity would be answered in the same way). Accordingly, we will vacate the judgment of the district court and remand the case to it with instructions to vacate the judgment of the bankruptcy court and in turn remand to it so that it may conduct a new trial and decide the case in consideration of the correct uniform

standard of proof on objections to a discharge in bankruptcy under section 523(a), namely whether the objector has persuaded the court, as fact finder, by a preponderance of the evidence.

## VI.

Both the bankruptcy court and the district court were correct in holding that the fraud issue present in this case was not precluded by the prior Tax Court judgment. However, since *James B. Beam* requires that *Grogan*'s preponderance standard be applied retroactively to our case, we will vacate the judgment of the district court and remand the case to it so that it may vacate the bankruptcy court's judgment and remand this proceeding to it for a new trial. Each party to bear its own costs.