**In re David William FULLER, Debtor.**

**David William FULLER, Plaintiff,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 93–10899.
Adv. No. 94–1061.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 13, 1995.

James E. Blackwood, Erie, PA, for Debtor.

Angelo A. Frattarelli, Washington, DC, for Defendant.

## OPINION [1]

WARREN W. BENTZ Chief Judge.

### Introduction

The within Complaint is brought by David William Fuller ("Fuller" or "Debtor") against the United States of America, Internal Revenue Service ("IRS") to determine the dischargeability of the Debtor's income tax obligations for the years 1984 through 1988. The issue which arises under 11 U.S.C. § 523(a)(1)(C) is whether the Debtor willfully attempted in any manner to evade or defeat such tax. We conducted an evidentiary hearing on July 6, 1995 and find that the matter is now ripe for decision.

### Findings of Fact

Prior to 1982, Fuller derived his income solely from his employment as a pilot for United Airlines. Fuller completed his own tax returns which were timely filed and any amounts due were paid. Fuller normally obtained a refund.

Between 1982 and 1985, Fuller continued his employment with United Airlines and he and his sons operated a jewelry business. The business suffered losses from thefts. Fuller did not file his tax returns for 1982 and 1983 until contacted in person by the IRS in 1986. Fuller had an accountant prepare the 1982 and 1983 tax returns. He owed taxes for 1982 and received a refund for 1983 which more than offset the 1982 liability. Fuller did not file any further income tax returns until 1990.

Meanwhile, Fuller had other problems in his life. He had a son who became addicted to drugs and stole from his jewelry business. In 1986, Fuller suffered a seizure in which he passed out. As a result, he lost his flying license and was placed on disability. Fuller's mother died in 1986 and Fuller had continual problems with his children.

In October or November, 1986, Fuller received his first disability income benefit, a lump sum of $21,000 for the period from June through October. At about the time he received this payment, he met with office personnel at the airline and was informed that his disability benefit was taxable. Fuller authorized $5,000 in federal withholding from the first lump-sum payment and authorized continued withholding from his future monthly benefit checks.

Also in 1986, Fuller rolled over funds from his United Airlines 401K Plan into an IRA account. In 1987 and 1988, Fuller withdrew and spent the bulk of his IRA account. Fuller believed he was entitled to use ten-year income averaging for tax purposes on his withdrawals. He estimated his tax liability at $21,000 and paid that amount.

The funds withdrawn from the IRA account were used to reduce obligations including business debt, for furniture, cars, and schooling for his children. Fuller and his wife separated in October, 1988, and their divorce was finalized in late 1991.

By 1990, Fuller was essentially without assets although he continued to receive his monthly disability income benefit. His disability benefit was used monthly for alimony payments, living expenses, and credit card

1. This Opinion constitutes this Court's findings of     fact and conclusions of law.

obligations. He was living in a rented apartment, had an old van and a ⅙th interest in some farmland. The farmland had been pledged for a loan and was eventually taken by the secured creditor.

In May, 1990, Fuller was again contacted in person by the IRS and was advised that if his delinquent returns were not filed by July 13, 1990, he would be criminally prosecuted. Fuller knew that his returns were delinquent, but did not think he had any liability for unpaid taxes. Fuller believed his business losses in 1984 and 1985 would offset income and negate any tax liability. Fuller believed that his voluntary withholding from his disability income payments was sufficient to cover the related tax obligation and believed that he was entitled to 10 year income averaging on his IRA withdrawals and that his voluntary payment of $21,000 covered the related tax liability.

Fuller filed his delinquent returns by the agreed upon date of July 13, 1991. In preparing the returns, Fuller learned for the first time that he was not eligible for 10 year income averaging and also that he no longer was in possession of business records to substantiate his 1984 and 1985 business losses. Fuller, concerned more with the impending criminal prosecution than the amount of tax liability, completed the delinquent returns with the information available. If anything, Fuller overreported his income because of his lack of business records. Fuller filed the returns as a single person. Fuller considered himself single due to separation from his spouse. He was unaware that persons married, filing separate, were subject to a higher tax bracket. Fuller was surprised at the extent of his tax liability on the returns which reflected the following unpaid tax liabilities:

| 1984 | $11,605.24[2] |
| 1985 | 15,273.44 |
| 1986 | 24,340.51 |
| 1987 | 43,635.11 |
| 1988 | 31,877.85 |

Fuller found himself with a large tax liability and nothing with which to pay the amounts due. Fuller has never had sufficient assets since he filed his tax returns in 1990 to meaningfully reduce his tax liability. As of March, 1995, including penalties and interest, IRS claims a total amount due of $314,786.85 for the years 1984–88.[3]

The IRS does not challenge the accuracy of Fuller's returns and no claim is made that Fuller filed a fraudulent return or understated his income. The IRS does not allege that Fuller transferred or concealed any assets.

Shortly after Fuller filed his returns in 1990, the IRS began its normal collection efforts. The taxes were assessed and liens were filed. Fuller contacted Attorney McConnell. In March, 1991, a meeting was held with Attorney McConnell and an IRS representative. Fuller was not at the meeting. The IRS requested financial information from Fuller through Attorney McConnell which was never received. The IRS then issued a summons to Fuller's bank to obtain Fuller's bank records. Fuller objected to the summons. He had Attorney McConnell correspond with the IRS and Fuller conveyed his objections to the bank. Fuller believed that the IRS lacked authority to seize his bank records. The IRS responded to McConnell with appropriate citations of authority.

At this point (May–June, 1991), Fuller met a person who "seemed to know a lot about taxes" and who put Fuller in touch with a "tax protestor" group. Unfortunately for Fuller, he obtained the "help" of the group and followed their advice. He wrote numerous letters objecting to every collection effort taken by the IRS. He threatened to sue those who might comply with IRS demands and threatened to sue IRS employees. After IRS levied his monthly disability income, Fuller, upon the advice of the tax protestor group, filed a Chapter 13 bankruptcy, scheduled the IRS debt at $10,000, and then objected to the IRS proof of claim. The Chapter 13 case was eventually dismissed and

2. The 1984 return did not show the tax due. It showed only the amount withheld of $13,967.76. The IRS calculated the tax amount as $25,573.00.

3. We do not address the dischargeability of tax obligations for years subsequent to 1988 as the Debtor does not claim that those obligations are dischargeable.

Fuller continued his letter writing campaign, objecting to every effort of collection by the IRS, essentially claiming that the IRS actions were unconstitutional and illegal.

At the date of trial, Fuller continued to believe that his constitutional rights were violated; that IRS acted without giving him due process or appropriate notice even though IRS followed investigative and attachment procedures which have been found to be lawful.

## Discussion

■ The parties agree that Fuller's tax obligations for 1984 through 1988 are dischargeable unless the nondischargeability provisions of 11 U.S.C. § 523(a)(1)(C) apply. § 523(a)(1)(C) provides that an individual debtor is not discharged from a debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The IRS makes no claim that the returns are fraudulent; it claims that the evidence shows that Fuller willfully attempted to evade or defeat his tax obligations.

Three Circuit Courts of Appeal have recently addressed tax dischargeability issues arising under § 523(a)(1)(C). In *In re Toti,* 24 F.3d 806 (6th Cir.1994) *cert. den.,* —— U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994), the debtor failed to file income tax returns despite the fact he knew he was liable for taxes. The debtor had the wherewithal to pay his tax obligations during some of the years that he failed to file. The debtor-taxpayer was indicted and pleaded guilty for his willful failure to file his 1976 tax return. As part of his sentence, the debtor-taxpayer filed his delinquent returns. He did not make any voluntary payments for the years in question. A payment plan was negotiated. The debtor-taxpayer was unable to make the payments and subsequently filed a petition under Chapter 7 of the Bankruptcy Code and sought to discharge his tax liabilities. The Court of Appeals for the Sixth Circuit agreed with the District Court "that the definition of 'willfully attempted to evade' was consistent with the definition found in other civil tax cases, which equates 'willful' with voluntary,

conscious, and intentional evasions of tax liabilities." *Id.* at 809. The Court determined that § 523(a)(1)(C) includes both acts of commission and acts of omission. The Court found that the debtor-taxpayer was not an honest debtor, entitled to a "fresh start" under the Bankruptcy Code; that he had the wherewithal to file his return and pay his taxes, but did not fulfill that obligation; and that he did so voluntarily, consciously, and intentionally. *Id.* The Court held that the debtor-taxpayer willfully attempted to evade or defeat his tax liability and that the debt was nondischargeable. *Id.*

The Court of Appeals for the Fifth Circuit addressed the issue in *In re Bruner,* 55 F.3d 195 (5th Cir.1995). In *Bruner,* the debtor-taxpayer was a surgeon with substantial income. He failed to file tax returns or pay any tax over an eight year period. The debtor-taxpayer was indicted and convicted for willfully failing to file. As part of his sentence, he was ordered to file the delinquent returns. The returns were then filed and the debtor-taxpayer made substantial payment over the following five year period. Vast sums remained unpaid when the debtor-taxpayer filed a petition under Chapter 7 of the Bankruptcy Code and sought to discharge his tax liabilities. The Court determined that the debtor-taxpayer, in addition to the failure to file and the failure to pay, was involved in flagrant conduct aimed at avoiding even the imposition of a tax assessment against him; that he conducted an inordinate number of cash transactions and created a shell entity designed to conceal income and assets. *Id.* The Court held that "[a] pattern of non-payment such as is present here, particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C)" and that the debtor-taxpayer did "not qualify as the sort of 'honest debtor' the Bankruptcy Code is designed to protect."

The Court of Appeals for the Eleventh Circuit addressed the issue in *In re Haas,* 48 F.3d 1153 (11th Cir.1995). In *Haas,* the debtor-taxpayer filed tax returns for the

years at issue, but failed to make payment. *Id.* at 1154. The debtor-taxpayer pled guilty for willful failure to pay his income taxes and as part of his sentence was ordered to make monthly payments on his tax liability. The debtor-taxpayer subsequently filed a petition under Chapter 11 of the Bankruptcy Code and sought to discharge his tax obligations. *Id.*

In *Haas,* the debtor-taxpayer readily acknowledged his tax liability and other than his failure to pay the obligation, did not engage in any conduct evincing an illicit motive to defeat or evade the taxes due. *Id.* at F.N.2. The debtor-taxpayer did not conceal assets, engage in dubious transfers of assets, falsify or destroy books or records, or misstate the amount of income in the years at issue. *Id.* Instead of satisfying his tax liability, the debtor-taxpayer used his income to pay personal and business expenses. *Id.* The Court held that "a debtor's failure to pay his taxes, alone, does not fall within the scope of § 523(a)(1)(C)'s exception to discharge in bankruptcy." *Haas* at 1158.

The Court of Appeals of the Third Circuit has examined the "willfulness" requirement in the context of Internal Revenue Code § 6672 which imposes a 100% penalty on individuals within a corporation responsible for paying withholding taxes who willfully fail to pay such taxes. *Quattrone Accountants Inc. v. Internal Revenue Service,* 895 F.2d 921 (3d Cir.1990). It determined that "willfulness" within the meaning of § 6672 "means a voluntary, conscious and intentional decision to prefer other creditors over the Government." *Id.* at 928. At least one Bankruptcy Court within the Third Circuit has determined that the interpretation of "willful" adopted by the Third Circuit in *Quattrone* is the appropriate standard to use when interpreting the meaning of "willful" in § 523(a)(1)(C). *In re Irvine,* 163 B.R. 983 (Bankr.E.D.Pa.1994). The *Irvine* court stated:

> Under § 523(a)(1)(C), therefore, a debtor will be considered to have willfully attempted to evade a tax if he acted voluntarily, consciously, or intentionally or with reckless disregard for whether the tax has been paid. With respect to § 523(a)(1)(C),

a debtor acts with reckless disregard if he knew or should have known that the tax was due and did not pay the tax.

*Irvine,* 163 B.R. at 987.

The IRS asserts that Fuller got money from his IRA accounts and spent it. He knew, or should have known, the correct amounts of his tax liabilities. Later, when he late-filed his tax returns, he had no money to pay. Then, when IRS subpoenaed his bank records and attached his disability payments and his pension, he wrote nasty letters about IRS procedures. He filed his delinquent tax returns only when an IRS agent threatened criminal prosecution. Such conduct, it is argued, warrants denial of discharge.

■ We agree the appropriate standard is whether the debtor-taxpayer voluntarily, consciously, or intentionally attempted to evade taxes. However, we also agree with the Eleventh Circuit, that "a debtor's failure to pay his taxes, alone, does not fall within the scope of Section 523(a)(1)(C)'s exception to discharge in bankruptcy." *Haas,* at 1158. The mere failure to pay tax obligations does not amount to a voluntary, conscious or intentional attempt to evade taxes within the meaning of § 523(a)(1)(C).

We find that the present case more closely resembles that of *Haas* rather than *Toti* or *Bruner.* Fuller did not have to be indicted and ordered by a court to file his delinquent returns. When contacted by the IRS agent, Fuller complied with his request to file the returns. Fuller, until the returns were prepared in 1990, honestly believed he had no tax liability. He had almost always received a refund in prior years and during the years in question, had calculated what he believed were the correct amounts of his tax liability and had those amounts withheld from his income. Fuller did not attempt to falsify records. He made no misstatements as to the amount of his income and filed his returns accurately (except that he may have overstated his income due to the loss of certain business information that may have substantiated losses). Fuller did not engage in any dubious transfers and did not conceal assets.

After Fuller's 1984–88 returns were prepared, Fuller found himself in an impossible situation. He discovered that he had a tremendous tax liability and no wherewithal with which to pay the amounts due. After the IRS levied on his only means of existence, his monthly disability income, Fuller sought help. Unfortunately, he met someone who put him in touch with a "tax protestor" group. The group promised help and Fuller followed their erroneous advice. We note that Fuller is not truly a "tax protestor." Fuller never protested the imposition of the tax; he protested only the collection methods used based on his true belief that his constitutional rights were being violated. His protests took the form of letters to everyone involved in the collection process. His letters may have been irritating and misguided, but they were open, above board, and not surreptitious or secret.

Fuller appears to be an honest, harmless, prematurely old, friendly, overweight individual who has trouble coping. Fuller functioned well financially while he was a highly paid pilot for United Airlines; his tax return was simple, and his tax liability was covered by withholding. However, after his disability commenced, he had access to his IRA accounts and he seemed to be incapable of protecting the funds from family and creditors and did not make appropriate business judgments to shepard the proceeds so as to cover his own liabilities. We do not find that Fuller voluntarily, consciously, or intentionally attempted to evade his tax liability. Accordingly, we find that his income tax obligations for the years 1984 through 1988 are dischargeable.

■ We note that this finding of dischargeability does not leave the IRS without remedy. The IRS filed liens which attached to the Debtor's prepetition assets which include a pension plan. The Debtor is presently 57 years old and will be entitled to receive pension payments at age 60. The IRS tax liens on the Debtor's pension survive discharge and the IRS will be able to levy on the pension payments.

An appropriate order will be entered.

*ORDER*

This 13th day of October, 1995, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that David William Fuller's income tax obligations to the United States of America, Internal Revenue Service, for the years 1984 through 1988, are discharged.